KENNERTY v. ETIWAN PHOSPHATE COMPANY.

1. A complaint alleged that plaintiff had executed to defendant a paper under seal containing a release and covenant not to sue for future damages, without reading the paper so executed and not knowing at the time that such release and covenant were therein inserted, but supposing that this paper, which was sent to him by his attorney, was a copy of another paper previously executed by plaintiff, in which there was no such release or covenant. The complaint contained no allegations of mutual error, nor of fraud, concealment, or imposition by defendant, but only showed a mistake by plaintiff, occurring through no fault of defendant; and judgment was prayed for a reformation of the instrument, and an injunction to restrain defendant from using it in bar of an action by plaintiff for damages. *Held,* on demurrer, that the complaint did not state facts sufficient to constitute a cause of action.

2. If, under the prayer for general relief, a cancellation could be decreed, still the facts stated made no cause of action, especially as no offer was made to repay the money received by plaintiff from defendant under the terms of the said instrument.

3. The complaint should have been dismissed, and the Circuit judge erred in granting leave to plaintiff to amend, as no ground appeared for any of the amendments authorized by section 194 of the code of procedure; and the plaintiff cannot, by way of amendment, make a new cause of action, *e. g.*, cancellation of instrument, instead of reformation.

4. This case distinguished from *Bischoff & Co.* v. *Blease,* 20 *S. C.*, 460.

5. An allegation that defendant had violated the agreement furnishes no ground for a reformation of the agreement.

Before COTHRAN, J., Charleston, April, 1883.

The order of the Circuit judge in this case was as follows:

This matter came on to be heard by the court on a motion to dismiss the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The question presented is purely one of pleading, in the consideration of which it must be borne in mind that the code of procedure has completely reversed the ancient rule of the common law, which allowed nothing by way of intendment, and required all construction to be made most strongly against the pleadings. In this matter the rule has been substituted in most, if not in all, of the cases, and certainly in ours, that "in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties." See *Code*, § 180. "When the allegations of a pleading are indefinite and uncertain, so that the precise nature of the charge or defence is not apparent, the court may require the pleading to be made definite and certain by amendment." This ought not to be, as it is too often, confounded with the remedy by oral demurrer, such as has been interposed here; the provision for amendments is very ample. See chap. VI., title VI., *passim.*

The complaint should contain a plain, concise, and intelligible statement of the material facts which constitute the ground of relief as they actually exist, and not the legal effect, or as part of those facts, and nothing of the mere evidence or probative matter by which their existence is established. It may as well be conceded, once for all, that the code of procedure is now the only source of authority from which the rules of pleading may be drawn; that its methods have completely supplanted those which

preceded it, and that the latter (which we have abandoned with such evident reluctance) can no longer be appealed to as possessing of themselves any force and authority. *Pom. Rem.*, § 515. The object of the pleading is still, as it has always been, to arrive at a special issue upon a given and material fact; the primary requirement is, that the complaint shall contain a statement of the facts constituting the plaintiff's cause of action, not according to their legal effect, as such may appear to the mind of the pleader, but as they actually existed, and must be set forth in ordinary language. Presumptions of law must not be stated.

A demurrer upon the ground that the complaint does not state facts sufficient to constitute a cause of action, does not necessarily deny the existence of the right or cause of action, but its effect is to raise the issue whether or not the complaint has alleged facts sufficient to put the defendant to his answer. Mr. Pomeroy (§ 519) has ventured to define the term, "cause of action," as follows : "(1) The plaintiff's primary right, and the defendant's corresponding primary duty, whatever be the subject to which these relate, whether of person, character, property, or contract; and (2) The delict or wrongful act or omission of the defendant, by which the primary right or duty have been violated." This seems to be philosophical and sound. The first inquiry then is, obviously, does a cause of action exist here? and, secondly, does the plaintiff's complaint state facts sufficient to put the defendants to their defence by way of answer?

It may be observed that the defendants have not thought it proper or necessary, up to this time, to answer the complaint. Had they done so, it would in no wise have affected the result of this motion. The complaint only is before me, and for the purpose of this motion, every allegation contained in it, which has been properly averred, must be taken to be true. Whether the defendants have the right thus to attack the complaint before an issue is made up by answer, demurrer, or notice of appearance (which would have taken the case to a docket), for other reason than to require the plaintiff to make the allegations thereof "more definite and certain," has not been questioned by him, and may therefore be considered as having been waived.

The plaintiff and defendant are contiguous land owners on

Charleston Neck, the one a truck farmer, the other engaged in the manufacture of commercial fertilizers. The occupation of his premises by the former is prior, in point of time, to the possession of theirs by the latter. Several years ago, the plaintiff, being aggrieved and injured in his property by the action of the defendants in the legitimate business in which they were engaged, brought suit in this court and recovered a verdict for $2,000 damages against the defendants. That proceeding not being for a public nuisance, but for injuries sustained by the plaintiff, the damages given by the jury could in no event be estimated beyond the period at which the verdict was rendered.

It would seem that, as a right of action existed in favor of the plaintiff then, as was shown by the result of the suit, the same cause, if continued, would produce like results, with like remedy to the plaintiff for future damages; and suits *toties quoties* might have been instituted by the plaintiff against the defendants; and thus an abatement of the nuisance would have been accomplished by means of the increased severity of the verdicts of successive juries in punishment of the contumacy or obstinacy of the defendants. If, therefore, the plaintiff has not deprived himself of this continuing right by the terms of the so-called agreement (a fact to be determined, according to my view of the matter, at a future stage of this suit, and upon an issue differently made up to this), and if he has sustained damages at the hands of the defendants, as he alleges in his complaint, and as must be conceded under the rule of law applicable to the defence by way of demurrer, then is the conclusion irresistible that a cause of action exists against the defendants in this behalf.

Secondly. Does the complaint state facts sufficient to constitute a cause of action ? The principle of law under which this proposition will be considered, and which commands the support of an array of authorities almost interminable, is well stated in the case of *Morse* v. *Gilman*, 16 *Iowa*, 504, citing a line of New York cases to be found in 4 *Duer*, 610, 5 *Id.*, 697, and *E. D. Smith*, 554. It is as follows: "A complaint to be overthrown by demurrer must be wholly insufficient. If the complaint to any extent, or any portion of it, presents facts sufficient to constitute a cause of action, or if a good cause of action can be gathered from it, it will

stand.   Contrary to. the common law rule, every reasonable intendment and presumption is to be made in favor of the pleading, and it will not be set aside on demurrer unless it be so fatally defective that, taking all the facts to be admitted, the Court can say they furnish no cause of action whatever."

The plaintiff alleges in his complaint that he signed a certain paper which contains a stipulation on his part not to claim future damages from the defendants, and a covenant not to sue therefor; but he most positively denies that he was advised of, or in any way had knowledge of, such stipulation and covenant.   That the said paper was procured from his attorney at law, the late M. P. O'Connor, Esq., "by overtures made by, or in behalf of, the said defendant corporation."   That, admitting the efficacy and binding effect otherwise of such stipulation and covenant, the defendants themselves have violated the terms of said agreement by enlarging the capacity of their works, by reason whereof he claims to have been released from the terms of the said agreement.   In paragraph 1 he alleges that "irreparable damage" will be done to him by the operation of the defendants' works.   The effect of the demurrer is to admit the truth of these allegations.

Mistake, overreaching, breach of agreement, are all grounds of equitable jurisdiction and relief.   These are all alleged in the complaint, and admitted by the demurrer.   It is true that the complaint does not, in terms, allege that improper means (necessarily) were used in procuring the so-called release; in other words, fraud *eo nomine* is not charged; but he does allege that, "by overtures made by, or in behalf of, the said defendant corporation," this arrangement was effected with his attorney, without the knowledge of the plaintiff, without his assent or intelligent approval.   Fraud is a mixed question of law and fact; so also, for example, is the term *indebted*; and I am not sure that each of these used in a complaint as the statement of a legal conclusion would not, under the code, be obnoxious to the rules of correct pleading.   The correct rule seems to require the statement of facts, the proof of which establishes the fraud or debt, as the case may be.

It is easy to conceive of a case wherein a demurrer sustained would be an act of mercy to him against whom it operates, in

relieving him of the agony of protracted suffering and of inevitable death; but it is a blessing in such complete disguise as rarely to be recognized or appreciated; and it is so harsh, that, under the liberal practice of the code as to amendments, it should not be resorted to, unless the case is manifestly immedicable. If I were even more doubtful as to the correctness of the conclusions attained, I should hesitate to sustain the demurrer interposed here. Thus to deny the right of a hearing to the plaintiff upon the merits of his case (if it have any), would be to cut him off from all hope of redress; and if "irreparable damage" has been done to him, as admitted by the demurrer, the court itself would perpetuate the wrong. No such result can occur to the defendant. The costs and annoyance of litigation are by no means inconsiderable, but they are, in comparison with even possible "irreparable damage," but as the small dust of the balance. Nor can the statutes of limitations avail the defendants upon this motion, as contended for in argument. Section 94 of the code limits this form of defence to the answer. *Jones* v. *Massey*, 9 *S. C.*, 376.

The defendants have supported their motion with very elaborate arguments, with the enumeration of many indisputable propositions of law, and with much authority. Such may be of great service in a future stage of this proceeding, when the merits of the case come on to be considered, provided such a state of facts shall then be made to appear as will justify their application. A consideration of these at this time, in the view of the case taken by me, would be premature and unnecessary.

Wherefore it is ordered and adjudged: 1. That the motion to dismiss the complaint be, and the same is hereby, refused. 2. That the defendants have leave to answer the complaint within twenty days after they shall have had notice hereof; and that the plaintiff have leave to amend his complaint if advised that it is necessary to do so. 3. Let the costs of this motion abide the final result of the cause.

The defendant appealed upon numerous and lengthy exceptions, which raised the precise points considered and determined by this court.

*Messrs. B. J. Whaley* and *A. T. Smythe*, for appellant.

*Messrs. Robert Chisolm* and *A. G. Magrath,* contra.

April 26, 1884.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   John Kennerty, plaintiff, respondent, owns a farm on Charleston Neck, on which he has for years been engaged in raising vegetables, strawberries, and other crops for the markets of Charleston, New York, and other places.   Since he has been engaged in this business, the Etiwan Phosphate Company, defendant, appellant, has erected upon an adjoining plantation large works for manufacture of commercial fertilizers, in the preparation of which quantities of sulphuric acid are used, producing certain gases, fumes, and vapors, very injurious to both vegetable and animal life, and from which great injury resulted to the respondent; on account of which he brought action against the respondent and recovered a verdict for the sum of $2,000 and costs of suit.

From this verdict the defendant gave notice of appeal, pending which negotiations commenced between the attorneys of the respective parties for a settlement of the controversy.   In the meantime, additional injury had resulted to the respondent. During these negotiations, an agreement was prepared by respondent's attorney, M. P. O'Connor, Esq., which respondent signed, in which, in consideration of the amount of the verdict and an additional sum of $250 to be paid him, with the costs of suit and the raising by appellants of their chimneys through which the gases and vapors escaped, twenty-five feet higher than formerly, he accepted the same as satisfaction of all damages up to that time, and agreed to discontinue the action then pending.   It does not appear whether this paper ever went into the possession of the appellants, or that they knew of its execution.   It is stated that they never assented to it.

After this, the negotiations between the attorneys continued, of which respondent alleges, however, that he had no knowledge, and subsequently, as alleged, respondent's attorney sent him a second paper by his (respondent's) son, who received it directly from his attorney, Mr. O'Connor, with the request that he would take it and have it signed.   That the respondent supposing, as he alleges, that it was not different from the previous paper,

signed and returned it to his attorney.   This paper, in addition to the stipulations in the first, contained a release and waiver from all future damages resulting from the same cause of which respondent had previously complained, and a covenant under seal that he would not thereafter sue the appellant company for such damages as might, or would, be suffered by him in the future. This second paper was signed by the respondent, in the presence of T. Massalon and T. J. Kennerty, June 10, 1876, and at the bottom is endorsed a statement, signed by Mr. O'Connor, that said deed of release was read over again to John Kennerty, and acknowledged as his deed, in his presence, and dated June 17, 1876.

Notwithstanding these facts, the respondent avers in his complaint that he supposed the second paper was the same as the first; that he was never consulted by his attorney as to any change; that he had no knowledge as to the additional stipulations; that had he been informed thereof, he would have unhesitatingly refused to execute any such release or covenant; that he never authorized or empowered his said attorney to enter into any negotiation, or to make any settlement embracing such stipulations.   He denies, too, that the release and covenant were ever read over to him, or that he ever knew they were contained in the paper until subsequently, when he directed his present attorney, Mr. Chisolm, to bring action for damages still resulting to his crops, he was informed by his said attorney that defendants had such a paper.   Under these circumstances, the present action was commenced, in which, upon allegations as above stated, he prays judgment that the said paper in the possession of, and held by, the defendant corporation shall be brought into court, and the release and covenant be erased therefrom, and the same be decreed to have been inserted without the authority of the respondent, and that the defendant be enjoined and prohibited from using the same to prevent the plaintiff from protecting his property from damage, &c., and for such further relief as may be proper, &c., &c.

At the February term of the court for Charleston county, upon previous notice, a motion was made to dismiss the complaint, on the ground that it did not state facts sufficient to constitute a

cause of action. This motion was overruled, and defendant was granted leave to answer the complaint within twenty days. Leave was also given the plaintiff to amend his complaint. By appeal from this order, the case is now before us.

The main question presented in the appeal is: admitting the allegations to be true, are they sufficient as facts to constitute a cause of action? A cause of action, defined in a few words, is a primary right of one, either legal or equitable, invaded by another. Do the facts alleged in this case show such a right, either legal or equitable, in the plaintiff, and that it has been invaded by the defendant? The right which the plaintiff claims, and for the violation of which he seeks redress, is to have a certain paper, which he acknowledges he executed, reformed by striking therefrom certain stipulations therein which he alleges he did not know the paper contained when he signed it, and also to enjoin the defendant from using it against him in its present form as a defence to such action as he may institute for the protection of his property. His purpose is to strike from this paper above referred to the release and the covenant not to sue for future damages.

To simplify the matter, it is an action to reform a written instrument executed by the plaintiff to the defendant. It may be well to state here that this paper seems to have been executed in 1876; was soon thereafter placed upon record by the defendant; that the stipulations as to the payment of the money required from the defendant, and raising the chimneys of the works twenty-five feet higher than formerly, have been complied with; and no offer or tender by the plaintiff of the money back has been made. It is alleged, however, that the defendants have materially enlarged their works, and in that respect have violated the agreement. It may be further stated that some time before the present action the plaintiff brought suit to enjoin the defendant from operating their works. In this suit, the paper now in question was brought into court by the plaintiff as the basis upon which he asked the equitable relief of a perpetual injunction, this paper, as he supposed, having precluded him from an action on the law side of the court for damages. In this suit, his complaint was dismissed upon two grounds: (1) that the action could

not be maintained until the legal right upon which the relief depended was established on the law side of the court; and (2) even with such right established, or not denied, there was nothing in the case to entitle the plaintiff to be released from his covenant not to sue contained in the said paper.  See 17 *S. C.*, 411.

With these statements, we will recur to the question, do the facts alleged entitle the plaintiff to have the relief demanded, or any relief ?  Do they show a right on his part to have the instrument in question reformed, or to prevent the defendants from using it as a defence to any future action for damages growing out of their phosphate works, as they stood when the instrument was executed, leaving the paper as a settlement of the previous case ?

The cases in which the question of relief in equity may arise in connection with an instrument in writing executed by the parties may be divided into several classes: 1. Where there is a mutual mistake as to the facts upon which it is based, or as to the terms and stipulations embraced therein.  2. Where one of the parties only is under such mistake, either of the facts or the stipulations, and such mistake has been occasioned by the fraud, deceit, or imposition in any form of the other.  3. Where one of the parties only is under such mistake, and this has occured from no fault of the other, but solely by the negligence or inattention of the first party.

In the first two classes, where the mistake is made to appear by clear and competent testimony, equity will unhesitatingly afford the necessary relief, either by reforming the paper or cancelling it as the case may require.  In the third, equity will refuse its aid, except under very strong and extraordinary circumstances, showing imbecility or something which would make it a great wrong to enforce the agreement, and this must be made to appear by competent testimony of the clearest kind; the general, and we might say the almost universal, rule being, as was expressed by Chancellor Dargan, in *Murrel* v. *Murrel*, 2 *Strob. Eq.*, 148, "that a party fully competent to protect himself, under no disability, advised as to all the circumstances by which he may be saved in his rights, or in a situation where he might by due diligence be so advised, not overreached by fraud, concealment, or misapprehension, nor the victim of a mistake against

which prudence might have guarded, has no right to call upon the courts to protect him." Without encumbering this opinion with extracts and quotations, we think the above principles will be found laid down by the standard authors, and in leading cases on this subject. See *Story Eq. Jur.*, §§ 110, 127, 146, 151; *Adams Eq.*, 171; *Andrews & Shepherd* v. *Essex Fire Ins. Co.*, 3 *Mason*, 10; *Nevius* v. *Dunlap*, 33 *N. Y.*, 676; *Lyman* v. *United Ins. Co.*, 17 *Johns.*, 373; *Sawyer et al.* v. *Hovey*, 3 *Allen*, 331; *Murrel* v. *Murrel*, 2 *Strob. Eq.*, 148; *McDow* v. *Brown*, 2 *S. C.*, 108.

To constitute a cause of action in this case, under either the first or second class, it should appear in the complaint either that there was a mutual mistake as to the contents of the paper in question, to wit, some stipulation omitted, or inserted, without the knowledge and against the understanding of both, or that the plaintiff was so mistaken, or uninformed, resulting from the fraud, concealment, overreaching, or imposition in some way, in whole or in part, or at least in some degree, by the defendant. Now, admitting the allegations stated in the complaint to be true, and giving to them the most liberal intendment allowed by the spirit of the reformed procedure, do they bring the case under either of the above classes? We think not. There is certainly no allegation of a mutual misunderstanding of what the paper contained. On the contrary, it fully appears in the complaint itself that the release of and the covenant not to sue for future damages were the very matters which the defendants desired and were negotiating to have inserted. They declined the first paper because it did not contain these stipulations.

Secondly. Do the facts stated show that the plaintiff was mistaken as to these stipulations being inserted, and that he was misled in reference thereto by the fraud, imposition, or improper conduct of the defendant in any way? There is certainly no distinct charge of that kind made, nor, after most careful examination of the complaint, do we find a single fact stated from which it may be inferred that such a charge was intended to be made. The nearest approach to such an allegation is found in the twelfth paragraph of the complaint, where it is stated that pending the appeal in the previous case, some overtures were made by the

defendant to plaintiff's attorney, M. P. O'Connor, &c. The meaning of the term overture is a proposition, an offer. Now, there is nothing essentially corrupt or fraudulent in all propositions, or offers, so that every one must necessarily have such a feature. This will depend upon the nature and character of the proposition or offer. Here the proposition was for a settlement of the controversy. That parties should desire to settle a litigation is not a fraudulent desire. Nor, in endeavoring to bring it about, is the fact that it was made to the attorneys of the party a fraudulent act. On the contrary, such mode is in the highest degree proper; and it would be better in all cases that such mode should be observed than that the parties themselves, over the heads of their attorneys and without their knowledge, should undertake it.

It is true the complaint alleges that the plaintiff was entirely ignorant of the insertion of these stipulations, although he had the paper in his possession, and signed it in the presence of witnesses. He also alleges that had he known of their insertion, he could not have been prevailed upon under any circumstances to sign the paper. He also alleges that having signed a previous paper with no such stipulations inserted, and containing only such terms as he was willing to make, and this second one being sent to him by his attorney to be signed, he supposed it was as the first and signed it without observing any change. All this may be true, but it in no way connects the defendants with the mistake. The defendants knew of and desired the insertions, and made no effort, nor resorted to any contrivance, to conceal this fact from the plaintiff. On the contrary, the stipulations were plainly expressed in the paper which was delivered to the defendants, signed and executed by the plaintiff in the presence of witnesses, one of them the son of the plaintiff. The defendants were not present even, and there is no allegation, not the most remote, that defendants had any agency whatever in obtaining plaintiff's signature.

We have seen that the case does not fall under the head of mutual error. It is equally apparent, from what we have said above, that it does not fall under the head of a mistake occasioned by fraud, imposition, misplaced confidence, or overreach-

ing by one party as against the other.  But taking the case as stated, and giving the facts their fullest force and effect, it is one where the instrument expresses exactly what was intended by the one side, but contains important insertions that the other (that other being the party who executed it) did not know were embraced; of which want of knowledge the first party had no information or suspicion, nor had any agency in producing; on the contrary, had every reason to believe that the paper as executed was precisely in accordance with the understanding of both parties, and so believing, has since carried it out by paying the money called for, and otherwise conforming thereto.

This brings the case under the third class.  Does the general rule of that class apply?  Or do the facts stated rank it with the exceptions?  Was the plaintiff an imbecile?  Was he incompetent to protect himself?  Was he laboring under any disability of mind or body?  Was he unable to read?  Was he in a situation where he could not have been fully advised by due diligence as to the contents of the paper?  Was there any concealment, or circumstances of surprise?  Could not reasonable and proper prudence have guarded him against the mistake?  Do the facts stated in the complaint taken as true entitle him to invoke the benefit of any or all of these pleas?  If not, in the language of Chancellor Dargan, *supra*, "he has no right to call upon the courts to protect him," because, upon his own showing, he has no cause of action for reformation. We do not find any fact stated in the complaint from which it may be inferred that he was excusably mistaken as to the contents of the paper which he so solemnly executed under seal and in the presence of two witnesses, and upon which the court, in the exercise of equity jurisdiction, can seize and afford him relief.  If the plaintiff was really ignorant of the contents of the paper, it was an ignorance under circumstances which even the most careless might have avoided.  He had nothing to do but simply to read it.  This he had full opportunity to do, and if he failed to embrace said opportunity, he has no one to blame but himself.

The case presents itself in this attitude: the plaintiff has signed a paper in which he has for a consideration released certain rights and made a certain covenant.  The paper has all the

incidents of a solemn and deliberate execution. It is under seal and was executed in the presence of two witnesses, who attested the same. He now comes into court and says that he was ignorant of the fact that the release and the covenant were embraced, and the only reason he gives for this ignorance is that he had some time before this execution signed a previous paper as to the same matter in which the release and covenant were not embraced, and he supposed therefore that this second paper was the same as the first. If he thought the second was the same as the first, where was the necessity of the second paper? We have no reason to doubt but that the plaintiff is truthful in his statements. In fact, the effect of the demurrer is to admit them, and the case in that aspect may be a hard one. But we cannot adjust matters according to the hardships arising in individual cases. An attempt to administer law or equity by such a principle would produce infinite confusion, uncertainty, and injustice, far beyond any compensation that might result from the relief afforded in a special case. The law is built up upon general principles, and the wisdom of the past has determined that it is much the safest to adhere to them as producing the greatest good to the greatest number, rather than undertake to relieve a present hardship in special cases. If this plaintiff is entitled to relief under the circumstances claimed, we do not see why any contract should ever be regarded as absolutely binding.

It should be observed further that the plaintiff does not ask that the paper should be entirely cancelled and the original status restored. He has received the consideration and has enjoyed it for years, but he makes no offer to return it. His purpose is to strike from the paper the part to which he objects and then allow it to remain as a settlement of the previous suit. The right of action which he claims is not cancellation, with restoration of original status, but reformation and the establishment of a different contract from that which appears in the paper. Here are two distinct causes of action presented, and requiring a different state of facts. A paper may be reformed when the mutual understanding of the parties requires it, without entire cancellation and without restoration of the original status, but an entire cancellation only takes place when no valid contract has been made,

and the parties are to be put back as they stood at the beginning.
These are different rights, and their invasion gives rise to differ-
ent causes of action, requiring in the complaint a statement of
facts suited to each.

The plaintiff here does not demand a cancellation in express
terms; whether he intended to do so, under the general prayer
for such further and other relief as may be proper, we do not
know. If he did, however, then we say, that the facts stated in
the complaint do not constitute a cause of action in that respect,
especially as he makes no offer or tender to restore the original
status.

The second question in the case grows out of the order grant-
ing plaintiff leave to amend his complaint. Under the former
practice, demurrers were of two kinds, general and special. The
first went to the substance and the latter to the form. Upon a
judgment on the first, amendments were not allowed; upon the
latter, however, they were generally permitted—the distinction
being the fact that the one was founded on substance, showing
the absence of a cause of action, which was fatal, and the other
on a mere matter of form, which could be remedied. In *Fraser*
v. *Legaré, Bail. Eq.,* 389, it was held that where demurrer for
want of parties is sustained, leave may be granted to amend so as
to make necessary parties. In *Mobley* v. *Mobley,* 7 *Rich.,* 431,
it was held, that before judgment rendered on general demurrer,
leave to amend may be granted. See also *Macfarland* v. *Dean,*
*Cheves,* 64, as to special demurrer. But after judgment on gen-
eral demurrer, a motion to amend could not be allowed. *Chalk*
v. *McAlily,* 10 *Rich.,* 92. On general demurrer to a declara-
tion, the court has no power to permit the plaintiff to amend.
*Bagley* v. *Johnston,* 4 *Rich.,* 22. Still more, an order grant-
ing leave to amend generally (as in this case) without stating in
what particular, is irregular. *Thompson* v. *Malone,* 13 *Rich.,* 252.

Thus stood the law under the former practice. Have the
courts any greater power under the reformed procedure? The
two sections in the code which have special reference to amend-
ments, are sections 193 and 194. The first more especially refers
to amendments by the parties themselves. This is not a case of
that kind, and therefore that section need not be considered.

The second, to wit, 194, is the one which expressly gives power to the courts to permit amendments, and is therefore the one which we must consider. That section provides: "That the court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defence, by conforming the pleading or proceeding to the facts proved."

Has the leave to amend here been granted in accordance with this section? The section authorizes amendments either before or after judgment. There is no limit, therefore, as to the time or the stage of the proceeding; but this general latitude does not extend to the character of the amendment. On the contrary, the section specifies the character, and therefore the power of the court conferred therein only extends to amendments of the character thus specified. *Expressio unius est exclusio alterius.* The name of any party may be added, stricken out, or corrected, as also a mistake in other respects. Other allegations material to the case may be inserted, or when the amendment does not change substantially the claim or defence, the pleading or proceeding may be conformed to the facts proved. And these amendments, as we have stated, may be allowed either before or after judgment.

Does it appear that the leave granted here was intended to meet any one of these specifications? The leave in its terms was general and permits any amendment which the plaintiff may be advised to be necessary. This, we think, went beyond the intent of the section under consideration. But confining the leave to the requirements of the section, does it appear that the complaint was defective in any of the particulars mentioned as the subject of amendment therein, and to which the leave could apply? Would any amendment to the complaint, by adding, striking out, or correcting the name of any party, be of any service? Is there any mistake to be corrected? Were there any allegations material to the case as made left out? Were there any facts proved, to which the pleadings might be made to conform? We must

give a negative answer to all of these questions. There is certainly no name to be added, corrected, or stricken out. Nor is there any mistake to be corrected. Nor have any allegations material to the case as made been omitted.

The plaintiff's case is one for reformation of the paper, not for cancellation, and he cannot now in any event make a new claim, or state a new cause of action. He must stand or fall upon the cause of action with which he started out, and especially must this be the case when, as we think, the judgment of the court below should have been a dismissal of the complaint. We must look at the case in that aspect. Suppose the Circuit judge had sustained the demurrer and dismissed the complaint, could he then, after such judgment, have permitted, under the section *supra*, an amendment by which the case could be restored with a new cause of action ? We think not. This section is intended to perfect a proceeding in which the plaintiff has been successful, and not when he has lost the case. It is intended to have the judgment of the court completed and perfected, and not as the means of obtaining a new trial upon a new cause of action after the case has been lost on the cause upon which it was instituted. We think it was error to allow this general leave to amend under the circumstances of the case.

This case may be distinguished from the recent case of *Bischoff & Co.* v. *Blease*, 20 *S. C.*, 460, in the fact that there a material allegation to the case made was wanting. The plaintiffs sued as partners, but neglected to allege in terms a partnership, though that fact was stated in the title.

It is alleged in the complaint that the defendants have violated the agreement. If this be so, it may afford an opportunity to the plaintiff to bring action for such damages as he may have sustained thereby; but it is not a fact which in any way strengthens the cause of action upon which he relies in the present case, and which we have held to be insufficient.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the complaint below be dismissed.

MR. JUSTICE MCIVER concurred generally, but MR. JUSTICE MCGOWAN only in the result.