## NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, Plaintiff,

v.

## BROWN & MARTIN COMPANY, INC., and City of Columbia, South Carolina, Defendants.

### No. 89–348.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 3, 1989.

On Motion to Alter or Amend
Dec. 6, 1989.

Robert Francis McMahan, Jr., Glenn, Irvin, Murray, Gray & Stepp, Columbia, S.C., for plaintiff.

Kenneth E. Gaines, Columbia, S.C., for City of Columbia.

Henry Wall, Columbia, S.C., for Brown & Martin Co.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on cross-motions by all parties for summary judgment.[1] For the reasons set forth below, the Court grants the motion of defendant Brown & Martin Co., Inc. ("Brown & Martin") and plaintiff National Fire Insurance Company of Hartford ("National") and denies the motion of defendant City of Columbia, South Carolina ("City of Columbia"). Accordingly, the Court directs that judgment be entered in favor of plaintiff National and defendant Brown & Martin.

The material facts are undisputed.[2] In October and November 1988 defendant City of Columbia solicited sealed bids for construction of a city project known as "Saint Mark Woods Subdivision," which required installation of a sewer line. The bidding instructions for the project provided that all bids be submitted no later than 10:00 a.m. on November 15, 1988, and that each be accompanied by a bid bond or certified check in an amount equal to five percent of the bid. Memorandum of the City of Columbia in Support of its Motion for Summary Judgment ("City of Columbia's Memorandum"), Exh. E ¶¶ 1.1, 2.6,

---

1. Plaintiff National Insurance Company of Hartford has not filed a formal motion but both by memorandum and at oral argument it joined in Brown & Martin's motion.

2. At oral argument, the lawyers for all three parties agreed that the material facts are undisputed and that summary judgment is appropriate.

11.1. The instructions further stated: "The successful bidder, upon his failure or refusal to execute and deliver the contract and bonds required within ten (10) days after he has received notice of the acceptance of his bid, shall forfeit to the Owner, as liquidated damages, for such failure or refusal the security deposited with his bid." City of Columbia's Memorandum, Exh. E ¶ 12.0.

Brown & Martin's president, Mr. Pringle Boyle ("Boyle"), prepared and submitted a bid on the project for $588,912. City of Columbia's Memorandum, Exh. E at P-1 to P-5. He also submitted a bid bond in the amount of $29,445.60, issued by plaintiff National. City of Columbia's Memorandum, Exh. G. When the bids were opened on November 15, 1988, it was revealed that Brown and Martin's bid was the lowest by approximately $100,000.[3] City of Columbia's Memorandum, Exh. G at 3. At that time Boyle became suspicious of Brown & Martin's low bid and decided to review his computations. Boyle discovered he had mistakenly computed the line item price for line 22, the removal of asphalt and its replacement with concrete, based on a linear foot rather than a square yard price. City of Columbia's Memorandum, Exh. I. The price submitted for line 22, based on the linear foot measurement, was $10.00 per unit or a total of $68,900.[4] *See* City of Columbia's Memorandum, Exh. E at P-3. In addition, Boyle discovered that a paving subcontractor had mistakenly submitted a bid to Boyle & Martin for line 22 of $2.70 per square yard for concrete patchwork instead of $27.00 per square yard.[5] On November 16, 1988, the Columbia City Council voted to accept Brown & Martin's bid and to award it the contract. *See* City of Columbia's Memorandum, Exh. H at 2.

Later that day, the City of Columbia received a hand-delivered letter from Boyle seeking to withdraw or correct the bid. *See* City. of Columbia's Memorandum, Exhs. I, D, at 43–44. Nevertheless by letter dated November 16, 1988, the City of Columbia notified Brown & Martin that it had been awarded the contract. City of Columbia's Memorandum, Exh. J.

On November 23, 1988, a preconstruction conference was held, attended by representatives of Brown & Martin and the City of Columbia. At that meeting, John Ricketts, the City of Columbia's Director of Utilities & Engineering, characterized Boyle's error as "an honest mistake" and informed Brown & Martin that, because it had promptly notified the City of the error, he would recommend that Brown and Martin be permitted to increase its bid by $68,-900. City of Columbia's Memorandum, Exh. L at 6, 11–13; Ricketts Deposition at 43–44. In a memorandum, dated December 1, 1988, Ricketts recommended to the city manager that the bid be increased to $657,-812. Subsequently, however, Ricketts changed his recommendation[6] and the city manager then recommended to the city council that Brown & Martin's request to change its bid be denied, that the second lowest bid be accepted and that Brown & Martin's bid bond be forfeited. Excerpts of Depositions Cited by Brown & Martin, Exh. C at 4. At a meeting on December 14, 1988, the city council adopted this recommendation and decided that, if Brown & Martin did not execute the contract within forty-eight hours, the project would be awarded to the next lowest bidder and Brown & Martin's bid bond would be forfeited. City of Columbia's Memorandum, Exh. P at 7. Brown & Martin refused to sign the contract and the bid was awarded

---

**3.** The next lowest bid was $688,747. City of Columbia's Memorandum, Exh. G at 3.

**4.** The next lowest bid for line 22 was $20.00 per unit or a total of $137,800. City of Columbia's Memorandum, Exh. G at 2.

**5.** The subcontractor's vice-president states he notified a woman at Brown & Martin of the mistake before the due date for bids. City of Columbia's Memorandum, Exh. W. Boyle asserts that he was never personally notified of

the mistake. Affidavit of Pringle Boyle (Attached to Memorandum in Support of Brown & Martin's Motion for Summary Judgment) ¶ 9.

**6.** This change resulted from Ricketts' belief, which he later admitted was erroneous, that a telephone log showed Brown & Martin was aware of its mistake on the day before the bids were opened. City of Columbia's Memorandum, Exh. N at 4–5.

to the second lowest bidder. City of Columbia's Reply Memorandum to Brown & Martin Company, Inc.'s Memorandum in Support of its Motion for Summary Judgment, Exh. C at 2.

On February 15, 1989, National brought this action seeking a declaration that the City of Columbia is not entitled to recover any part of the bid bond amount or, alternatively, indemnification from Brown & Martin for any payment required to be made under the bond. Defendant Brown & Martin's answer asserts it is entitled to rescission and also seeks a declaration that the City of Columbia may not recover on the bond. Defendant City of Columbia's answer seeks judgment in the amount of the bond.

Both defendants have now moved for summary judgment and plaintiff National has joined in Brown & Martin's motion.[7] For the reasons set forth below, the Court concludes that National and Brown & Martin are entitled to summary judgment and that the City of Columbia is not entitled to recover under the bond.

▪▪▪▪ The question which the Court must decide is whether under South Carolina law a contractor, such as Brown & Martin, who submits a mistaken bid is entitled to rescission of a construction contract and return of its bid bond. The South Carolina courts have not considered this precise issue, but the majority of courts which have addressed the question hold that under the proper circumstances a contractor should be permitted to withdraw a bid or rescind a contract when its bid is based on a mistake of fact. *See* Annotation, *Right of Bidder for State of Municipal Contract to Rescind Bid on Ground That Bid Was Based upon His Own Mistake or That of His Employer,* 2 A.L.R.4th

991, 1003–1021, 1029–1038 (1980) (citing cases). Although courts have not been unanimous in articulating the particular conditions which entitle a contractor to withdraw a bid or rescind a contract, they have generally granted relief to a bidder if (1) the error is so substantial that enforcement would be unconscionable and (2) if notice is given before the nonmistaken party has substantially changed its position so that it cannot be returned to the *status quo ante*.[8] *Corbin on Contracts* § 609, at 682–84; *cf.* Annotation, *supra,* at 998. The Court concludes that the South Carolina courts would adopt the majority view which is consistent with existing South Carolina authority on rescission for unilateral mistake.

Under South Carolina law, a contract may be rescinded for unilateral mistake not induced by the other party when the mistake is accompanied by circumstances which would make it a great wrong to enforce the agreement and the nonmistaken party may be returned to the *status quo ante*. *Scott v. Mid–Carolina Homes,* 293 S.C. 191, 199, 359 S.E.2d 291, 296 (1987); *King v. Oxford,* 282 S.C. 307, 313, 318 S.E.2d 125, 128–29 (1984); *see also Jumper v. Queen Mab Lumber Co.,* 115 S.C. 452, 458–59, 106 S.E. 473, 475 (1921). This general rule is consistent with the prevalent modern view and the practice of many courts in other jurisdictions. *See* Restatement (Second) of Contracts § 153 & comment a (1981); 3 *Corbin on Contracts* § 608 (1960). It is also consistent with the majority position concerning rescission of bid contracts and some courts have relied on the general rule to permit rescission by bidders. *See, e.g., First Baptist Church of Moultrie v. Barber Contracting Co.,* 189 Ga.App. 804, 377 S.E.2d 717, 719–20 (1989); *State v. Ottinger,* 232 Ark. 35, 334 S.W.2d

---

7. *See supra* note 1.

8. A number of courts have often stated that withdrawal or rescission is permissible only if the bidder has not been guilty of some particular standard of misconduct, such as negligence or gross negligence. Erroneous bids, however, usually involve some degree of negligence and courts have not been consistent in enforcing this condition. The better view is that the bidder's lack of care *vel non* should not necessarily

determine its right to relief. *See Marana Unified School Dist. No. 6 v. Aetna Casualty & Surety Co.,* 144 Ariz. 159, 164–65, 696 P.2d 711, 716–17 (1984); *Regional School Dist. No. 4 v. United Pacific Ins. Co.,* 4 Conn.App. 175, 493 A.2d 895, 897–98, *cert. denied,* 196 Conn. 813, 494 A.2d 907 (1985); 3 *Corbin on Contracts* § 609, at 683–84 (1960); Restatement (Second) of Contracts § 157 & comments (1981).

694, 696 (1960). The Court believes that the South Carolina courts would likewise apply the general rule of unilateral rescission to bidding contracts and adopt the majority rule on rescission of such contracts, particularly in light of the long-standing policy of the State courts against forfeitures. *See Elliott v. Snyder,* 246 S.C. 186, 143 S.E.2d 374, 375 (1965) ("Forfeitures are not favored in law and Courts will seize upon even slight evidence to prevent one."); *see also South Carolina Tax Comm'n v. Metropolitan Life Ins. Co.,* 266 S.C. 34, 39, 221 S.E.2d 522, 523 (1975); *Cope v. Jefferson Standard Life Ins. Co.,* 134 S.C. 532, 534, 133 S.E. 440, 441 (1909).

Having concluded that the South Carolina courts would adopt the majority position that a contractor is entitled to rescission where (1) the error is so substantial that enforcement would work a great wrong, and (2) notice is given before the nonmistaken party has substantially changed its position so that it cannot be returned to the *status quo ante,* the Court must determine whether rescission is warranted under the facts here. The Court concludes that it is.

■ Boyle's error decreased the amount of Brown & Martin's bid by $68,900, or approximately 11.7% of the total, and enforcement of the liquidated damages provision would result in a forfeiture of $29,445.50. From these facts, it is clear that the mistake was substantial and that enforcement of the contract would work a great wrong on Brown & Martin. In addition, Brown & Martin notified the City of Columbia of its computation error promptly after discovery before the City of Columbia took any action which might prevent a return to the *status quo ante.* When Brown & Martin refused to sign the contract and perform in accordance with its bid, the City of Columbia simply awarded the contract to the second lowest bidder at its bid price, the precise course it would have taken had

Brown & Martin never submitted a bid or been awarded the contract. Accordingly, the Court holds that Brown & Martin is entitled to rescission of the contract and that the City of Columbia is not entitled to retain the bond amount as liquidated damages. The Court reaches this decision notwithstanding provisions in the bidding instructions prohibiting withdrawal of bids after bid opening.[9] Other courts considering similar provisions have found them ineffective to prevent withdrawal or rescission where such relief is otherwise legally justified. *See, e.g., Moffett, Hodgkins & Clark Co. v. Rochester,* 178 U.S. 373, 386, 20 S.Ct. 957, 961, 44 L.Ed. 1108 (1900); *Peerless Casualty Co. v. Housing Auth. of Hazelhurst, Ga.,* 228 F.2d 376 (5th Cir.1955); *M.J. McGough Co. v. Jane Lamb Mem. Hosp.,* 302 F.Supp. 482, 487 (S.D. Iowa 1969); *Connecticut v. F.H. McGraw & Co.,* 41 F.Supp. 369 (D.Conn. 1941); *Marana Unified School Dist. No. 6 v. Aetna Casualty & Surety Co.,* 144 Ariz. 159, 162, 696 P.2d 711, 714–15 (1984); *M.F. Kemper Constr. Co. v. City of Los Angeles,* 37 Cal.2d 696, 703–05, 235 P.2d 7, 11–12 (1951); *First Baptist Church of Moultrie v. Barber Contracting Co.,* 189 Ga.App. 804, 377 S.E.2d 717, 721 (1989); *Boise Junior College Dist. v. Mattefs Constr. Co.,* 92 Idaho 757, 761–62, 450 P.2d 604, 608–09 (1969); *Wil-Fred's Inc. v. Metropolitan Sanitary Dist. of Greater Chicago,* 57 Ill. App.3d 16, 372 N.E.2d 946 (1978); *Baltimore v. DeLuca–Davis Constr. Co.,* 210 Md. 518, 529–35, 124 A.2d 557, 563–66 (1956); *Smith v. Lowe Constr. Co.,* 79 N.M. 239, 442 P.2d 197 (1968). This Court agrees with the reasoning of those courts and holds the provisions in the City of Columbia's bidding instructions do not preclude rescission here. In so holding, the Court notes that the City of Columbia's Procurement Code and Procurement Regulations expressly provide for withdrawal and correction of bids either before or after bid opening.[10]

---

9. The instructions provide that "[n]o bidder may withdraw a bid within sixty (60) days after actual date of the opening thereof" and that "[n]egligence on the part of the bidder in preparing the bid confers no right for the withdrawal of the bid after it has been opened." City of Columbia's Memorandum, Exh. E § 1.2, 6.0.

10. The Procurement Code provides:
    Correction or withdrawal of bids.

For the reasons set forth above, the Court grants the summary judgment motion of Brown & Martin and National and issues the requested declaration that Brown & Martin is entitled to rescission and that the City of Columbia is not entitled to recover under the bond. Accordingly, the Court directs that judgment be entered in favor of plaintiff National and defendant Brown & Martin.

IT IS SO ORDERED.

## ON MOTION TO ALTER OR AMEND

This matter is before the Court on the motion of defendant City of Columbia ("City") to alter or amend pursuant to Federal Rule of Civil Procedure 59(e). For the reasons set forth below, the motion is denied.

By order filed November 7, 1988, the Court granted summary judgment in favor of plaintiff National Fire Insurance Company of Hartford ("National") and defendant Brown & Martin Company, Inc ("Brown & Martin"), issuing a declaration that Brown & Martin was entitled to rescission of a bid contract it had entered with the City under a unilateral mistake of fact and that the City was not entitled to recover money under a bid bond executed by National and submitted to the City by Brown & Martin. Pursuant to that order judgment was entered in favor of National and Brown & Martin on November 9, 1989. The City now asks that the Court's order and judgment be altered on three grounds. The Court addresses each ground separately.

First, the City asserts that the Court "disregarded the distinction between pre-award notice of error and post-award notice of error." In its earlier order, the Court did not disregard this distinction, but found it not controlling under the facts involved. The timing of a bidder's notice of mistake is determinative only if the defendant has substantially changed its position before the notice so that it cannot be returned to the *status quo ante. See* Order filed November 3, 1989, at 5–6. Under the undisputed facts, the City did not so change its position here. The Court therefore sees no reason that rescission should be automatically barred here simply because of the happenstance that Brown & Martin's otherwise prompt notice occurred after the City's unusually swift decision to award Brown & Martin the contract.

Second, the City, relying on *Kennerty v. Etiwan Phosphate Co.,* 21 S.C. 226 (1883), contends the Court should have denied rescission because Brown & Martin's mistake was the result of negligence. The Court finds the City's reliance on *Kennerty* misplaced for two reasons. First, the *Kennerty* court did not hold that a contracting party's negligence bars equitable relief under all circumstances. Second, the plaintiff in *Kennerty* was seeking reformation rather than rescission, a distinction noted by the *Kennerty* court. *See id.* at 239. Later authority indicates that under South Carolina law, reformation is never available for unilateral mistake which was not induced by the nonmistaken party. *See Jumper v. Queen Mab Lumber Co.,* 115 S.C. 452, 106 S.E. 473, 476–78 (1921); *Hester v. New Amsterdam Casualty Co.,* 268 F.Supp. 623, 628 (D.S.C.1967). Rescission,

(a) *Cancellation of awards.* Correction or withdrawal of inadvertently erroneous bids before bid opening, withdrawal of bids after award, or cancellation of awards of contracts based on such bid mistakes, may be permitted in accordance with regulations promulgated by the city manager. After bid opening no changes in bid prices or other provisions of bids prejudicial to the interest of the city or fair competition shall be permitted. All decisions to permit the correction or withdrawal of bids, or to cancel awards or contracts based on bid mistakes, shall be supported by a written determination of appropriateness and shall be subject to approval by city council when the amount involved exceeds $10,000.

City of Columbia's Memorandum, Exh. § 1.3046. The Procurement Regulations contain the following relevant provision:
> Correction or withdrawal of bids; cancellation of awards.
> (a) *General Procedure.* A bidder or offeror must submit in writing a request to either correct or withdraw a bid to the procurement officer. Each written request must document the fact that the bidder or offeror's mistake is clearly an error that will cause him substantial loss.

City of Columbia's Memorandum, Exh. B reg. 1.12.

however, may be granted for unilateral mistake even when the mistaken party is negligent and whether the negligence should preclude rescission " 'depends to a great extent upon the circumstances in each instance.' " *Id.* at 630 (quoting *Anderson Bros. Corp. v. O'Meara*, 306 F.2d 672, 677 (5th Cir.1962)). Here, the circumstances do not warrant precluding rescission.

 Finally, the City seeks certification for immediate appeal pursuant to 28 U.S.C. § 1292(b). Certification is inappropriate here because the November 3, 1989, order decided all issues in the action and is therefore a final order immediately appealable without certification. *See Johnston v. Cartwright*, 355 F.2d 32, 38 (8th 1966) (28 U.S.C. § 1292(b) "has no pertinency" to order "which has attained finality for appeal purposes").

IT IS SO ORDERED.