## 75704. GRAHAM et al. v. HOGAN.
### (366 SE2d 219)

BIRDSONG, Chief Judge.

This is an action at law (see *Cantrell v. Henry County*, 250 Ga. 822, 825 (301 SE2d 870)) in implied assumpsit for money had and received, in which the recipients of the money (Graham and his wife) appeal the grant of summary judgment to the plaintiff law firm, and the denial of Graham's motion for summary judgment. The appellant Robert Graham received a check for $28,700 from his attorney in settlement of a 1978 judgment debt of $36,300 plus costs. The check was handed to Graham's wife (who is also a party) and Graham deposited it the next day. Subsequently, he (and his wife) spent it. In fact, the plaintiff contends this payment was a mistake and that the check should have been for $2,880, representing Graham's share of a total settlement of $6,500 collected on the judgment. *Held*:

1. The summary judgment granted to the appellee, plaintiff law firm, cannot be sustained. The basis of the summary judgment is the trial court's finding that there was no dispute as to the amount actually owed to the appellant Graham and there was no evidence of any prejudice to the appellant.

The finding of the trial court thus amounts to a holding that if it is undisputed a payment was a mistake, the recipient must give it back, and his having spent it is not a "prejudice" which the law will protect. This is not exactly the law. The basis of the decision in *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400 (349 SE2d 368), upon which the trial court relied, is OCGA § 13-1-13, which provides that a payment made through ignorance of the law or where all the facts are known and no artifice, deception, or fraudulent practice used by the other party, "*are deemed voluntary and cannot be recovered*" unless it was forced by other named circumstances. (Emphasis supplied.) This law is amplified, but not restricted, by OCGA § 23-2-32 (a), to the effect that negligence of the complaining party, "that want of reasonable prudence, the absence of which would be a violation of legal duty," will prevent recovery by equity. But an exception is given by paragraph (b) of § 23-2-32, in that "[r]elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." *Gulf Life Ins. Co.*, supra, p. 403.

On the basis of all the principles involved, the Supreme Court in *Gulf Life* concluded at p. 406: "In an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negli-

gence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment — *subject to a weighing of the equities between the parties by the trier of fact.*" (Emphasis supplied.)

Nearly all the alleged facts in this case are in dispute and the equities have not been weighed. In support of their summary judgment, the plaintiff-appellees have asserted that the appellants raised no evidence and no issues concerning the equities mentioned in *Gulf Life*, which are appellants' good faith and their prejudice. Id., pp. 404-405. Appellees insist they pierced appellants' defenses of good faith and the inequitability of restitution, by showing that appellants knew they might not receive any money in settlement of their judgment; that a settlement of $5,000 had been the only amount discussed with them and that appellants knew the judgment debtor might declare bankruptcy and were warned by the appellees not to expect more than $5,000; that appellant Robert Graham cashed the check before notifying the appellee attorneys that a mistake had been made; and that the appellants conclusively showed their bad faith by refusing to return the money when appellees notified them of the mistake.

These assertions are most assuredly not statements of undisputed fact, but are merely the argument of the appellees. The mere refusal to repay, by itself, cannot conclusively be deemed bad faith, if the recipient reasonably believes he legally does not have to repay. The record shows the appellants' version of events is very different from the appellees' assertions: the amount of the check was well within the amount of the judgment debt of $36,300 plus costs and interest since 1978, and the contingency to be kept by the attorneys had not been settled. A settlement offer of $5,000 had been discussed but appellant Robert Graham rejected the offer and the attorney was supposed to get more money and "get back in touch." Appellants were not aware when an actual settlement had been reached. Mrs. Graham visited the appellees' offices on another matter and was given the check. She was surprised and read it aloud: "$28,700," and the attorneys laughed and told her they had "bluff[ed] their way through." When his wife delivered the check to Robert Graham, he believed it to be the correct amount, but he attempted to call the attorney the next morning and numerous times during the week, to determine how they had received such a large amount. About a week later, Graham reached the attorney and did ask him how he was able to get that sum. The attorney responded that they bluffed their way through and had kept the debtor from going bankrupt; and the appellant Graham told the attorney how he was going to spend the money, including buying some property, to which the attorney responded, "Don't go wild." At this time appellant had spent only a small part of the money, but after this conversation he spent all of it.

Neither this court nor the trial court is authorized to decide that the appellee's version of events is the truth and the appellants' is not. If what the appellants say is true, it might then, in weighing the equities, be said they dealt in good faith. And the appellee's negligence or mistake might have been a "want of reasonable prudence, the absence of which would be a violation of legal duty" to the appellants (OCGA § 23-2-32 (a)); or, even if this negligence did not quite amount to a "violation of legal duty," nevertheless, if it operated to the prejudice (§ 23-2-32 (b)) of the appellants who acted in good faith, it might, in the weighing of the equities, prevent appellee from forcing restitution. See *Gulf Life*, supra, p. 406, quoted infra.

As for whether appellants were prejudiced, in *Gulf Life*, supra at 406, the court commented that the mere fact the recipients had spent the money "generally does not constitute 'prejudice'"; but the court (p. 405) held this issue of prejudice may be stated generally to be whether the " 'circumstances have so changed that it would be inequitable to require full restitution.' " *Department of Administrative Svcs. v. Pritchett*, 160 Ga. App. 294, 295 (287 SE2d 290). That determination would very much depend on what the appellants spent it for and what obligations, i.e., losses, they incurred as a result of the appellees' negligence or mistake and their own good faith. Obviously if the recipient keeps the money intact and handy to return, he is not prejudiced by having received it; and in fact just about the only way he will have been prejudiced would be to spend it. Therefore, the question is not, did he spend it, but was he harmed?

The trial court erred in granting summary judgment to the appellee, there being broad disputes of evidence, very clear issues of fact, and undetermined equities (*Gulf Life Ins. Co.*, supra), including the appellants' good faith and prejudice, and the extent to which either of them received and used the money.

2. The trial court did not err in denying summary judgment to the appellants Robert Graham and Muriel Graham on the appellee's count of fraud. The appellee alleged the Grahams' failure to apprise appellee of the amount of the check they had received and their negotiation of it amounted to fraud, since Robert Graham "knew that the amount of the check . . . was far in excess of any amount he was to receive as a settlement relating to the judgment"; and that this "failure to apprise" amounted to a material misrepresentation.

This "failure to apprise" is not a material misrepresentation, but, even though it is difficult to see how the appellants can be charged with concealment of what the appellees are charged with knowing, mere concealment will support an action for fraud if done in such a manner as to deceive and mislead. OCGA § 51-6-2 (a). Also, though it not be actual fraud, constructive fraud may arise out of any act of omission or commission, contrary to legal or equitable duty, trust or

confidence justly reposed, which is contrary to good conscience and operates to the injury of another; and constructive fraud may moreover be consistent with innocence and not smacking with moral guilt. OCGA § 23-2-51. The particular circumstances of a case may give rise to a duty to disclose, violation of which might be fraud (§ 23-2-53), as might be any unfair way used to cheat another (§ 23-2-56); and being in itself subtle, fraud may be proved by slight circumstances. OCGA § 23-2-57. If everything occurred exactly as the appellee says it did, the finder of fact might conclude the appellants committed a fraud. The trial court did not err in denying them a summary judgment.

3. The trial court did not err in denying summary judgment to Muriel Graham, which she sought on grounds she did not receive the money. If she spent any of it, she obviously received it; and if she knew her having it was a mistake, then she might not have been in good faith and, in the equities, she might be obliged to return it.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 16, 1988.

*Charles R. Desiderio*, for appellants.
*Richard L. Moore*, for appellee.