76505, 76506. LANDERS et al. v. HERITAGE BANK; and vice versa.
(374 SE2d 353)

POPE, Judge.

Nellie K. Landers and her husband Guy A. Landers opened a checking account in 1978 with Heritage Bank. Landers, who had retired after 22 years of active service with the U. S. Air Force, received monthly retirement benefits which were wire transferred by the Air Force into the joint checking account. Landers died on October 28, 1981, and Mrs. Landers promptly reported his death both to the Air Force and to the bank. On October 31, 1981, Mrs. Landers and her son, Guy A. Landers, Jr., met with an officer of Heritage Bank and arranged to delete Landers' name from the joint checking account and to substitute Guy A. Landers, Jr.'s name, without changing the account number. However, the bank neglected to notify the Air Force of these changes as required by federal regulation (31 CFR § 210 (e) and (h) (1)).

The Air Force continued to wire transfer funds which Mrs. Landers assumed to be widow survivor benefits, or other such benefits appropriately paid to her after her husband's death, into this account until October 1984. In January of 1985, the Air Force sent the bank a "Notice of Accountability," alleging that the bank owed the govern-

ment for payments received into the bank account after Landers' death in the amount of $24,173.66. Upon receipt of this notification from the Air Force the bank, without sending the Landerses a copy of the Notice of Accountability as required by 31 CFR § 210.11, or any other prior notice, debited $4,399.54 from their checking account on January 22, 1985 and $122 on March 3, 1985. After the initial debit the bank telephoned Mrs. Landers informing her that she owed the bank $19,652.12. Mrs. Landers responded that she no longer had the money.

In November of 1985, after the Air Force debited the bank's Federal Reserve account for the amount of $19,774.12, the bank filed suit against Mrs. Landers and Landers, Jr., for the difference between the amount the bank paid the Air Force and the amount retrieved from the Landers' account. The Landerses answered and filed a counterclaim for $4,521.54, representing the total amount seized from their account. In response to a motion for summary judgment filed by the bank, the Landerses sought dismissal of the complaint and an award of summary judgment on their counterclaim. The trial court granted the bank summary judgment, from which the Landerses appeal, and also awarded partial summary judgment to the Landerses for $4,521.54, which is the subject of the bank's cross-appeal. *Held*:

The bank advanced four theories of recovery: (1) that under the Uniform Commercial Code it had the right to revoke and charge back to a customer's account those checks it was unable to collect upon which it had extended provisional credit (OCGA § 11-4-212); (2) that it was also authorized by the Uniform Commercial Code to charge against a customer's account any item which was otherwise properly payable from the account even though the charge created an overdraft (OCGA § 11-4-401); (3) that the language on its signature card created a contractual right in the bank to charge any indebtedness of a depositor to the bank against that account; and (4) that the Landerses were unjustly enriched and profited to the bank's detriment because the Air Force was empowered to debit the bank's Federal Reserve account for the full amount of the money incorrectly deposited in their account.

Neither the Uniform Commercial Code provisions nor the signature card were effective to relieve the bank in the present situation. The Landerses had no contractual indebtedness to the bank, nor did they cause any overdraft, and the action taken by the bank to charge back against the account was not timely under OCGA § 11-4-301 (1). Moreover, although it is not stated in the order appealed from, since the trial court found the seizure of funds from the Landers account to be wrongful, it must be assumed that the judgment against the Landerses was based solely on the theory of unjust enrichment. Thus, notwithstanding that the bank's complaint alleged that the Landerses

were obligated to it as the result of an overdrawn checking account, the action was one for the recovery of voluntary payments, or money had and received, which is governed by OCGA § 13-1-13.

"'An action for money had and received lies in all cases where another has received money which the plaintiff ex aequo et bono is entitled to recover and which the defendant is not entitled to retain. (Cit.). Although legal in form, being an action in implied assumpsit, it is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and it is a substitute for a suit in equity. (Cit.)' [Cits.] Due to the nature and origin of the cause of action, however, ' "(t)he equitable right to restitution from one unjustly enriched at another's expense is terminated or diminished if circumstances have so changed that it would be inequitable to require full restitution." ' [Cits.]" (Indention omitted.) *Raccuglia v. Paine Webber, Inc.*, 180 Ga. App. 570, 571-72 (1) (349 SE2d 803) (1986). Therefore, in such an action, "the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment — subject to a weighing of the equities between the parties by the trier of fact." *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406 (349 SE2d 368) (1986).

"The finding of the trial court thus amounts to a holding that if it is undisputed a payment was a mistake, the recipient must give it back, and his having spent it is not a 'prejudice' which the law will protect. This is not exactly the law. . . . OCGA § 13-1-13 . . . provides that a payment made through ignorance of the law or where all the facts are known and no artifice, deception, or fraudulent practice used by the other party, '*are deemed voluntary and cannot be recovered*' unless it was forced by other named circumstances. (Emphasis supplied.) This law is amplified, but not restricted, by OCGA § 23-2-32 (a), to the effect that negligence of the complaining party, 'that want of reasonable prudence, the absence of which would be a violation of legal duty,' will prevent recovery by equity. But an exception is given by paragraph (b) of § 23-2-32, in that '(r)elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby.' *Gulf Life Ins. Co.*, supra, p. 403." *Graham v. Hogan*, 185 Ga. App. 842 (1) (366 SE2d 219) (1988).

There are genuine issues of material fact involved here in regard to how much, or if indeed, the Air Force overpaid Mrs. Landers when the benefits continued after her husband's death. Moreover, there has been no weighing of the equities as to whether the bank's negligence in failing to notify the Air Force after Landers' death precluded its claim, and whether Mrs. Landers experienced a change of position

whereby she would be unduly prejudiced by having to repay the bank; or, on the other hand, if Mrs. Landers spent money which she knew or should have known she had received by mistake, that she might not have acted in good faith and would be obligated to return it to the bank. Consequently, we cannot agree that either party was entitled to recover the full amount sought as a matter of law, and conclude that the trial court erred in granting summary judgment to the bank and partial summary judgment to the Landerses. *Graham*, supra; *Raccuglia*, supra.

*Judgments reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED OCTOBER 14, 1988.

*Frank W. Virgin*, for appellants.
*Mickey G. Roberts*, for appellee.