A92A2022. FIRST UNION NATIONAL BANK OF GEORGIA v. DAVIES-ELLIOTT, INC.
(429 SE2d 161)

COOPER, Judge.

Appellant is a bank with which appellee, a corporation, had a checking account. In this action for damages arising from the bank's alleged negligence in cashing a check, the bank appeals from a trial court order granting appellee's motion for partial summary judgment on the issue of the bank's liability.

We view the facts in a light most favorable to the bank as the non-moving party. *Brandywine Townhouses v. Morrison*, 200 Ga. App. 425 (1) (408 SE2d 422) (1991). Elliott is the president and sole stockholder of appellee corporation. When he started the corporation, he made his girl friend, Davies, secretary of the corporation and an authorized signatory on the corporation's checking account with the bank. Soon thereafter, Davies executed a document giving Elliott an unlimited general power of attorney. Several months later, Elliott and Davies' relationship terminated, and Davies left town. Elliott examined the corporation's checkbook after Davies threatened in a letter to "award" herself "damages" but did not discover any missing checks, though Davies had in fact taken the last check. While Elliott closed other bank accounts on which Davies was an authorized signa-

tory, he chose to keep the corporation's account open and simply remove Davies' name as an authorized signatory. To do this, Elliott went to the bank and told the branch manager he wanted to take a signatory's name off an account. Elliott also had a personal consumer account with the bank, and he did not specify which account he was referring to. The branch manager gave him a name deletion form requiring both his signature and that of Davies. He signed his own name in her presence and left with the form. While Elliott was at the bank, one of the tellers mentioned that she had cashed a check on another account for Davies, and he told her not to worry because he would cover it if the check was not good. Two or three days later, Elliott returned with the form, complete with his own signature and that of Davies, whose signature he had signed pursuant to the power of attorney.

The parties agree that the name deletion form was returned to the branch manager no later than Friday, March 15, 1991. It was then sent by courier to the commercial banking department in Atlanta, where it was received on Tuesday, March 19, 1991. However, the branch manager had given Elliott a form for a consumer rather than a commercial account, and the new employee who received the form for processing was not sure what to do with it and set it aside to discuss with her supervisor later. That same night, a check signed by Davies for $35,500 was paid by the bank. When the bank refused to reimburse appellee's account, appellee brought this action.

1. The bank argues that the trial court erred in concluding that its failure to act on appellee's name deletion request within at least a full weekend and two working days constituted negligence as a matter of law. In reaching its conclusion, the trial court analogized the request to drop a signatory's name to a request to stop payment on a check and applied the law governing the latter request. See OCGA § 11-4-403. However, we are not convinced that this analogy is apt, for it is not totally clear that a name deletion request must always be treated with the same urgency as a stop payment request. Although appellee presented expert testimony opining that a prudent banker will recognize that a name deletion request requires immediate attention and will treat it in a manner similar to its treatment of a stop payment request, a summary judgment cannot be granted to a plaintiff on the basis of opinion testimony. See *Ginn v. Morgan*, 225 Ga. 192 (2) (167 SE2d 393) (1969); *Fussell v. Jones*, 198 Ga. App. 399 (2) (401 SE2d 593) (1991). Nor can we concur with the trial court's conclusion that the bank was negligent as a matter of law in allowing a trainee to process the form. Accordingly, questions of fact remain as to the nature of the bank's duty to appellee and whether it breached that duty under the circumstances of this case. " 'Issues of negligence . . . are ordinarily not susceptible of summary adjudication whether

for or against the plaintiff or the defendant, but must be resolved by a trial in the ordinary manner.' [Cits.]" *Brandywine,* supra at 427. The trial court therefore erred in granting appellee partial summary judgment on the issue of the bank's liability.

2. The bank also contends that the trial court erred in rejecting on summary judgment its defense based on the equitable doctrine of constructive fraud. Specifically, the bank alleges that Elliott as appellee's agent failed to inform the bank that Davies was no longer secretary of the corporation; failed to inform the bank that he signed Davies' name on the name deletion form pursuant to the power of attorney rather than getting her actual signature; failed to inform the bank that Davies had left in displeasure and threatened to "award" herself "damages"; and affirmatively told a bank employee that he would cover Davies' check from another account if it was not good. The trial court focused solely on Elliott's failure to disclose his reliance on the power of attorney to sign Davies' name and concluded that since the power of attorney was valid, the bank could not have been harmed by the nondisclosure. However, this analysis missed the crux of the bank's argument, which is that appellee failed to disclose information indicating the urgency of the situation and made an affirmative statement arguably indicating that urgency was not necessary, and thus should be estopped from asserting a cause of action based on the bank's failure to act with the required sense of urgency. "Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." OCGA § 23-2-51 (b). Nondisclosure may provide the basis for constructive fraud where a party is under an obligation to communicate. OCGA § 23-2-53. "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case," id., and whether the particular circumstances of a case give rise to an obligation to disclose will generally be a jury question. See *Graham v. Hogan,* 185 Ga. App. 842 (2) (366 SE2d 219) (1988). Thus, questions of fact remain regarding whether appellee was obligated to disclose information indicating the urgent nature of appellee's request and whether the bank was justified in relying on appellee's failure to indicate the need for immediate action in treating appellee's request as a routine rather than urgent matter.

3. In light of our reversal of the grant of partial summary judgment based on the issues discussed in Divisions 1 and 2, we need not address the bank's remaining enumerations of error.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 12, 1993.

*Newton, Smith, Durden, Kaufold & Rice, Howard C. Kaufold, Jr.*, for appellant.

*Glen A. Cheney, Spivey, Carlton & Edenfield, J. Franklin Edenfield*, for appellee.