BOARD OF EDN. OF CHILLICOTHE CITY SCHOOL DISTRICT, APPELLANT, *v.* SEVER-WILLIAMS CO., INC., ET AL., APPELLEES.

[Cite as Bd. of Edn. v. Sever-Williams Co. (1970), 22 Ohio St. 2d 107.]

108

(No. 68-670—Decided May 6, 1970.)

110

*Mr. William W. Stanhope* and *Mr. Phil D. Butler,* for appellant.

*Messrs. McNamara & McNamara, Mr. John J. Petro* and *Mr. Charles S. Hire,* for appellees.

DOYLE, J.  In compliance with statutory requirements (R. C. 3313.46) the Board of Education of the Chillicothe City School District invited bids for the construction of a high school.  It advertised the fact in a newspaper of general circulation for a period of four weeks; it instructed that sealed proposals for the construction of the building in accordance with the plans and specifications on file would be received by the Clerk of the Board of Education for the board at its office "until 12 o'clock noon, Eastern Standard Time on Tuesday, June 20, 1961, and [bids] will be opened and read aloud immediately thereafter"; it stated that each bid must be accompanied by a surety company bond or certified check in an amount equal to ten per cent of the bid "as a guarantee that if the bid is accepted, a contract will be entered into in accordance with the draw-

ings and specifications and general conditions of the contract and bond form on file * * *." The publication further directed that "no bidder may withdraw his bid for a period of thirty days after the opening thereof."

The board of education met on June 20, 1961, and at an open meeting the three bids which had been submitted before the so-called dead line were opened and read. Sever-Williams was found to have submitted the lowest bid and was found by the board to satisfy the statutory requirement of being the "lowest responsible" bidder and was awarded the bid at the meeting immediately following.

When the bids were opened and read, a Mr. Puckett, vice-president and representative of Sever-Williams, observed a substantial difference between his company's bid and the bids of the two other bidders. He thereupon contacted the office of his company, and, upon examination of the items of his company's bid, discovered the omission of an item totaling $145,000. He informally discussed the question of error with a representative of the firm of architects employed by the board of education, but did not discuss the matter with the board.

As heretofore stated, the bid was accepted by the board on June 20, 1961, shortly after the bids were opened. On June 21, 1961, a contract was awarded to Sever-Williams as the lowest responsible bidder. After the award of the contract, a telegram was received by the board, from Sever-Williams, reading, in part, as follows:

"This will confirm our notice given to you yesterday that there was a mistake in our bid. We hereby withdraw our bid and request that our bid be disregarded in determination of the low bid and in the award of the contract."

The reference in the telegram to a confirmation of "notice given to you yesterday" obviously refers to Mr. Puckett's discussion of the error with an agent of the firm of architects and several school board members. On June 26, 1961, another telegram was sent by Sever-Williams to the board of education. It reads, in pertinent part:

"We have received a copy of your resolution and this is to inform you that we will not execute a contract on our bid submitted June 20, 1961, which contained a mistake in

amount of $145,000. We will take any legal action necessary to protect our rights."

A formal resolution of Sever-Williams was then presented to the board of education stating that it would not enter into a contract based upon its bid of June 20, 1961.

It is within the statutory power of the General Assembly to lay down rules governing the procedure for the letting of public contracts, and where a validly enacted statute sets forth requirements governing the letting of public contracts which are reasonably calculated to preserve the integrity of such contracts and to secure performance thereunder, the parties must comply with those requirements.

In R. C. 3313.46, the General Assembly has directed the method by which a building contractor may secure a contract with a board of education. It requires that contracts be awarded only after the opening of sealed bids, which must be accompanied by a bond conditioned that if the bid is accepted a contract will be entered into and the performance of it properly secured.

It thus appears that, in the letting of public contracts, the Ohio Code requires that two bonds be given. First, the bid bond, which must be filed with the bid. Then, if a contract is awarded the bidder, a performance bond is required in connection with the execution of the formal contract for the performance of the work.

In the instant case, the bid bond, upon which this suit is predicated, was presented with the bid for the work in the amount of $137,000, and the bid for the work was in the sum of $1,242,000, plus alternatives. The amount of the bond was well within the provisions of R. C. 3313.46, which, in pertinent part, reads:

"* * * said bond * * * to be in no case less than five per cent of the amount of the bid and conditioned that if the bid is accepted, a contract will be entered into, and the performance of it properly secured."

It is claimed by the defendant contractor that, "where a bidder on a public construction contract through an inadvertent clerical error, omits an item from the bid submitted, the bidder is entitled to the rescission of the bid and

bid bond if the bidder can establish that (1) the mistake was material; (2) the enforcement of a contract pursuant to the terms of the erroneous bid would be unconscionable; (3) the mistake did not result from a violation of a positive legal duty or from gross negligence; (4) there is no prejudice to the public authority except the loss of the bargain; and (5) prompt notice of the error is given.''

The above grounds for rescission find support in some cases in other states. In this state, however, no case involving similar facts has been heretofore decided.

It is obvious that this action is brought by the board of education for recovery in the amount of the bid bond executed by Sever-Williams and Federal Insurance. The amount asked is the amount specified in the bond ($137,000), not compensation for the extra cost of the work, which appears to be in the sum of $141,500; nor is the suit for specific performance of the contract.

In simple terms, the bid bond contract, by its very terms, went into full force and effect when the bid was accepted by the board of education. Also, by its very terms, the obligations contained therein could be terminated only if Sever-Williams entered into a construction contract and furnished another bond (performance bond) as required by statute, or, in the event of the contractor's refusal to enter into a contract and give a performance bond, to pay to the board of education the difference, not to exceed the ''penalty'' in the amount of $137,000, between the amount specified in the bid for the work and the amount for which the board of education may legally contract with another party to perform the work covered by the bid.

There are no conditions in the bond itself, nor in the advertisement for bids, that any mistake in the office of the bidder, prior to the making of the bid, may operate as a cancellation of any of the provisions of the bid bond contract. When Sever-Williams made its bid, it said exactly what it then intended to say, and it conveyed to the board of education, when the bid was opened and accepted, exactly the meaning that it intended to convey. Here, we have exact agreement in intention, as well as in expression. The mistake was one of computation wholly antecedent to

the expressed intention and communicated offer. These circumstances create a valid contract, enforceable against the bidder.

This is the contract the statutory bond guaranteed and which committed Federal Insurance to the obligations specifically set forth therein in the event of a failure of its principal to enter into a further contract and give a performance bond.

The question here presented, does not concern a construction contract, for it does not involve resulting damages or specific performance. This case is based on the bid bond contract and, while it is related to a construction contract, it is entirely separate therefrom and must be examined from the four corners of the bid bond contract. Such contract is consideration for the board of education to open and consider the bid, toward a possible award of a construction contract. The board of education completed this consideration.

In summary, this accepted contract contained in the bid bond says:

"If the obligee [board of education] shall accept the bid of the principal [Sever-Williams Company] and the principal shall enter into a contract with the obligee [board of education] in accordance with such bid and give a bond with good and sufficient surety for the faithful performance of such contract, *or in the event of the failure of the principal to enter into such contract and give such bond, if the principal shall pay to the obligee the difference, not to exceed the penalty thereof, between the amount specified in said bid and the amount for which the obligee may legally contract with another party to perform the work covered by said bid, if the latter amount be in excess of the former,* then this obligation shall be null and void, otherwise to remain in full force and effect." (Emphasis added.)

Certainly the General Assembly did not intend that the required bid bond should be a meaningless contract when accepted. Obviously its purpose is to compel the bidder to enter into a contract if his bid is accepted, or to compensate the public body, at least to some extent, for losses incurred if the bidder defaults.

A decision to hold a negligent bidder liable on his contract, where he has actually made a mistake in the preparation of his bid, may seem a hardship, but if the statute is to have any effect that must be the result. The statute is an essential part of the bidder's proposal and he makes all of its terms and conditions an obligation upon himself when he submits a bid. When the General Assembly enacted R. C. 3313.46, it created no exceptions for situations such as are here presented. In fact, it specifically provided the penalty as indicated above, "in the event of the failure of the principal to enter into such contract and give such [performance] bond." Cf. *Colella* v. *Allegheny County*, 391 Pa. 103, 137 A. 2d 265.

The legislative intent which prompted the passage of R. C. 3313.46 was obviously to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms. The statute must be enforced and relief in equity denied.

Therefore, the judgment of the Court of Appeals is reversed and this court enters final judgment in favor of the plaintiff and against the defendants on defendants' cross-petition; and the judgment of the Court of Appeals in favor of defendants on plaintiff's petition is reversed, and the cause is remanded to the Common Pleas Court for trial on the issue of damages under the terms of the bond.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, DUNCAN and CORRIGAN, JJ., concur.*

SCHNEIDER, J., concurs in the judgment. The bids were opened on June 20, 1961, but appellee did not promptly seek relief from the mistake resulting from its own negligence. It was thus barred by laches from asserting its claim for rescission when appellant finally brought this action to protect itself as late as February 1962, after appel-

---

*CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.

lant had awarded a new contract to the next highest bidder.

However, I do not concur in the syllabus which over-turns a long-standing rule followed in many political sub-divisions in Ohio as expressed by *Toledo* v. *Schulters* (1896), 11 C. C. 528, and *Ferro Concrete Construction Co.* v. *Board of Education of Cincinnati* (1911), 11 N. P. (N. S.) 86.

DOYLE, J., of the Ninth Appellate District, sitting for MATTHIAS, J.