77340, 77341. FIRST BAPTIST CHURCH OF MOULTRIE
v. BARBER CONTRACTING COMPANY et al.; and vice versa.
(377 SE2d 717)

McMURRAY, Presiding Judge.

The First Baptist Church of Moultrie, Georgia, invited bids for the construction of a music, education and recreation building. The bids were to be opened on May 15, 1986. They were to be accompanied by a bid bond in the amount of 5 percent of the base bid. The bidding instructions provided, in pertinent part: "Negligence on the part of the bidder in preparing the bid confers no right for the withdrawal of the bid after it has been opened."

Barber Contracting Company ("Barber") submitted a bid for the project in the amount of $1,860,000. The bid provided, in pertinent part: "For and in consideration of the sum of $1.00, the receipt of which is hereby acknowledged, the undersigned agrees that this proposal may not be revoked or withdrawn after the time set for the opening of bids but shall remain open for acceptance for a period of thirty-five (35) days following such time." The bid also provided that if it was accepted within 35 days of the opening of bids, Barber would execute a contract for the construction of the project within 10 days of the acceptance of the bid.

A bid bond in the amount of 5 percent of Barber's bid ($93,000) was issued by The American Insurance Company to cover Barber's bid. With regard to the bid bond, the bid submitted by Barber provided: "If this proposal is accepted within thirty-five (35) days after the date set for the opening of bids and the undersigned [Barber] fails to execute the contract within ten (10) days after written notice

of such acceptance . . . the obligation of the bid bond will remain in full force and effect and the money payable thereon shall be paid into the funds of the Owner as liquidated damages for such failure . . ."

The bids were opened by the church on May 15, 1986, as planned. Barber submitted the lowest bid. The second lowest bid, in the amount of $1,975,000 was submitted by H & H Construction and Supply Company, Inc. ("H & H").

Barber's president, Albert W. Barber, was present when the bids were opened, and of course, he was informed that Barber was the low bidder. Members of the church building committee informally asked President Barber if changes could be made in the contract to reduce the amount of the bid. He replied that he was sure such changes could be made.

On May 16, 1986, Albert W. Barber informed the architect for the project, William Frank McCall, Jr., that the amount of the bid was in error—the bid should have been $143,120 higher. In Mr. Barber's words: "[T]he mistake in Barber's bid was caused by an error in totaling the material costs on page 3 of Barber's estimate work sheets. The subtotal of the material cost listed on that page is actually $137,990. The total listed on Barber's summary sheet for the material cost subtotal was $19,214. The net error in addition was $118,776. After adding in mark-ups for sales tax (4 percent), overhead and profit (15 percent), and bond procurement costs (.75 percent), the error was compounded to a total of $143,120 . . . ." The architect immediately telephoned Billy G. Fallin, co-chairman of the church building committee, and relayed the information which he received from President Barber.

On May 20, 1986, Barber delivered letters to the architect and the church. In the letter to the architect, Barber enclosed copies of its estimate sheets and requested that it be permitted to withdraw its bid. In the letter to the church, Barber stated that it was withdrawing its bid on account of "an error in adding certain estimated material costs." In addition, Barber sought the return of the bid bond from the church.

On May 29, 1986, the church forwarded a construction contract, based upon Barber's bid, to Barber. The contract had been prepared by the architect and executed by the church. The next day, Barber returned the contract to the church without executing it. In so doing, Barber pointed out that its bid had been withdrawn previously.

On July 25, 1986, the church entered into a construction contract for the project with H & H, the second lowest bidder. Through deletions and design changes, the church was able to secure a contract with H & H for $1,919,272.

In the meantime, the church demanded that Barber and The American Insurance Company pay it $93,000 pursuant to the bid

bond. The demand was refused.

On May 26, 1987, the church brought suit against Barber and The American Insurance Company seeking to recover the amount of the bid bond. Answering the complaint, defendants denied they were liable to plaintiff.

Thereafter, defendants moved for summary judgment and so did the plaintiff. In support of their summary judgment motions, defendants submitted the affidavit of Albert W. Barber. He averred that in preparing its bid, Barber exercised the level of care ordinarily exercised by contractors submitting sealed bids. In support of its summary judgment motion, the church submitted the affidavit of a building contractor who averred that he would never submit a bid of any magnitude without obtaining assistance in verification and computation.

The trial court denied the summary judgment motions, certified its rulings for immediate review and we granted these interlocutory appeals. *Held*:

The question for decision is whether Barber was entitled to rescind its bid upon discovering that it was based upon a miscalculation or whether Barber should forfeit its bond because it refused to execute the contract following the acceptance of its bid by the church. We hold that Barber was entitled to rescind its bid.

That equity will rescind a contract upon a unilateral mistake is a generally accepted principle. See Corbin on Contracts, § 609 (1960). As it is said: "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake . . . and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake." Restatement (2d) of Contracts, § 153 (1979).

The following illustration demonstrates the rule: "In response to B's invitation for bids on the construction of a building according to stated specifications, A submits an offer to do the work for $150,000. A believes that this is the total of a column of figures, but he has made an error by inadvertently omitting a $50,000 item, and in fact the total is $200,000. B, having no reason to know of A's mistake, accepts A's bid. If A performs for $150,000, he will sustain a loss of $20,000 instead of making an expected profit of $30,000. If the court determines that enforcement of the contract would be unconscionable, it is voidable by A." Restatement (2d) of Contracts, § 153 (1979) (Illustration 1).

Corbin explains: "Suppose . . . a bidding contractor makes an offer to supply specified goods or to do specified work for a definitely

named price, and that he was caused to name this price by an antecedent error of computation. If, before acceptance, the offeree knows, or has reason to know, that a material error has been made, he is seldom mean enough to accept; and if he does accept, the courts have no difficulty in throwing him out. He is not permitted 'to snap up' such an offer and profit thereby. If, without knowledge of the mistake and before any revocation, he has accepted the offer, it is natural for him to feel a sense of disappointment at not getting a good bargain, when the offeror insists on withdrawal; but a just and reasonable man will not insist upon profiting by the other's mistake. There are now many decisions to the effect that if the error was a substantial one and notice is given before the other party has made such a change of position that he cannot be put substantially in status quo, the bargain is voidable and rescission will be decreed." Corbin on Contracts, § 609 (1960).

Georgia law is no different. It provides for rescission and cancellation "upon the ground of mistake of fact material to the contract of one party only." OCGA § 23-2-31. The mistake must be an "unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence." OCGA § 23-2-21 (a). But relief will be granted even in cases of negligence if the opposing party will not be prejudiced. OCGA § 23-2-32.

We can see these principles at work in *M. J. McGough Co. v. Jane Lamb Memorial Hosp.*, 302 FSupp. 482 (SD Iowa 1969). In that case, a bid of $1,957,000 was submitted for a hospital improvement by a contractor. A bond in the amount of $100,000 was given to secure the contractor's bid. The contractor submitted the lowest bid. After the bids were opened, but before its bid was accepted, the contractor informed the hospital that it erroneously transcribed numbers in computing the bid and that, therefore, it underbid the project by $199,800. Nevertheless, the hospital tried to hold the contractor to its bid. When the contractor refused to execute a contract, the hospital awarded the contract to the next lowest bidder. The contractor and surety sought rescission of the bid and the return of the bond. The hospital sued the contractor and surety for damages. The district court allowed the contractor to rescind. Its decision is noteworthy and illuminating. We quote it at length:

"By the overwhelming weight of authority a contractor may be relieved from a unilateral mistake in his bid by rescission under the proper circumstances. See generally Annot., 52 ALR2d 792 (1957). The prerequisites for obtaining such relief are: (1) the mistake is of such consequence that enforcement would be unconscionable; (2) the mistake must relate to the substance of the consideration; (3) the mistake must have occurred regardless of the exercise of ordinary care; (4) it must be possible to place the other party in status quo. [Cits.] It

is also generally required that the bidder give prompt notification of the mistake and his intention to withdraw. [Cits.] . . .

"Applying the criteria for rescission for a unilateral mistake to the circumstances in this case, it is clear that [the contractor] and his surety . . . are entitled to equitable relief. The notification of mistake was promptly made, and [the contractor] made every possible effort to explain the circumstances of the mistake to the authorities of [the hospital]. Although [the hospital] argues to the contrary, the Court finds that notification of the mistake was received before acceptance of the bid. The mere opening of the bids did not constitute the acceptance of the lowest bid . . . Furthermore, it is generally held that acceptance prior to notification does not bar the right to equitable relief from a mistake in the bid. [Cits.]

"The mistake in this case was an honest error made in good faith. While a mistake in and of itself indicates some degree of lack of care or negligence, under the circumstances here there was not such a lack of care as to bar relief. . . .

"The mistake here was a simple clerical error. To allow [the hospital] to take advantage of this mistake would be unconscionable. This is especially true in light of the fact that they had actual knowledge of the mistake before the acceptance of the bid. [Cits.] Nor can it be seriously contended that a $199,800 error, amounting to approximately 10 percent of the bid, does not relate directly to the substance of the consideration. Furthermore, [the hospital] has suffered no actual damage by the withdrawal of the bid of [the contractor]. The Hospital has lost only what it sought to gain by taking advantage of [the contractor's] mistake. [Cits.] Equitable considerations will not allow the recovery of the loss of bargain in this situation." *M. J. McGough Co. v. Jane Lamb Memorial Hosp.*, 302 FSupp. 482, 485, 486, *supra*.

In the case sub judice, Barber, the contractor, promptly notified the plaintiff that a mistake was made in calculating the amount of the bid. The plaintiff had actual knowledge of the mistake before it forwarded a contract to Barber. The mistake was a "simple clerical error." *M. J. McGough Co. v. Jane Lamb Memorial Hosp.*, 302 FSupp. 482, 485, supra. See OCGA § 23-2-21 (a). It did not amount to negligence preventing equitable relief. See OCGA § 23-2-32 (a). Furthermore, it was a mistake which was material to the contract (OCGA § 23-2-31)—it went to the substance of the consideration. (The mistake amounted to approximately seven percent of the bid.) To allow the plaintiff to take advantage of the mistake would not be just. *M. J. McGough Co. v. Jane Lamb Memorial Hosp.*, supra at 486. See also *Shelton & Co. v. Ellis*, 70 Ga. 297 (1883).

The contention is made that Barber's miscalculation constituted negligence sufficient to prevent relief in equity. See OCGA § 23-2-32

(a). Assuming, arguendo, that the error stemmed from such a want of prudence as to violate a legal duty (OCGA § 23-2-32 (a)), we must nevertheless conclude that Barber is entitled to rescission.

Relief in equity "may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." OCGA § 23-2-32 (b). It cannot be said that plaintiff was prejudiced by Barber's rescission. After all, plaintiff "lost only what it sought to gain by taking advantage of [the contractor's] mistake." *M. J. McGough Co. v. Jane Lamb Memorial Hosp.*, supra at 486.

The plaintiff takes the position that rescission is improper since, pursuant to the language set forth in the bid, Barber agreed not to withdraw the bid for a period of 35 days after the bids were opened. It also asserts that the language set forth in the bidding instructions prohibited Barber from withdrawing the bid on the ground of "negligence." We disagree. "[P]rovisions such as these have been considered many times in similar cases, and have never been held effective when equitable considerations dictate otherwise. [Cits.]" *M. J. McGough Co. v. Jane Lamb Memorial Hosp.*, 302 FSupp. 482, 487, supra.

The trial court properly denied the plaintiff's (the church's) motion for summary judgment. It erred in denying defendants' (Barber's and The American Insurance Company's) motions for summary judgment.

*Judgment affirmed in Case No. 77340; judgment reversed in Case No. 77341. Pope and Benham, JJ., concur.*

DECIDED JANUARY 9, 1989.

*Fallin & McIntosh, Billy G. Fallin, Kirbo & McCalley, Thomas L. Kirbo III*, for appellant.

*Smith, Currie & Hancock, Neal J. Sweeney, David R. Tyndall, Whelchel, Whelchel & Carlton, Hoyt H. Whelchel, Jr.*, for appellees.