S97A0596. DEPARTMENT OF TRANSPORTATION v. AMERICAN INSURANCE COMPANY et al.

(491 SE2d 328)

SEARS, Justice.

The Georgia Department of Transportation ("DOT") appeals from the trial court's entry of summary judgment against it in this dispute concerning under what conditions a bidder on a DOT construction contract is obligated to forfeit its bid proposal guaranty. We find that under the circumstances of this case, both the relevant stat-

utory scheme and basic principles of contract law dictate that the bidder was required to forfeit its bid proposal guaranty for refusing to execute a contract it had been awarded by DOT. Therefore, we reverse.

The relevant facts are stipulated to by both parties. DOT solicited bids for a bridge construction project. Mitchell Construction Company ("MCC") submitted its bid along with a five percent bid proposal guaranty, or bid bond, as required by the Transportation Code ("the Code").[1] The bids were opened, and MCC's bid was the lowest reliable one. MCC then realized that it had made a unilateral error of approximately $299,000 in calculating its bid, and asked DOT to release it from its bid bond obligation. DOT refused, and MCC then informed DOT by letter that it was withdrawing its bid. DOT refused to accept the withdrawal, formally accepted MCC's bid, and publicly announced that MCC had been awarded the construction project. DOT forwarded a contract to MCC, which MCC refused to execute. DOT then awarded the contract to the next lowest reliable bidder, and filed against MCC's surety, appellee American Insurance Company, to collect MCC's bid bond of approximately $148,000. The insurance company refused to pay the bond. After negotiations, the parties agreed to file an action in the superior court to determine their respective rights and obligations concerning the bond. Pending resolution of that action, the insurance company paid the bid bond to DOT.

In the superior court, the insurance company filed for declaratory judgment, and both parties moved for summary judgment. The trial court granted summary judgment to the insurance company, and ruled that because MCC's bid was based upon an unintentional unilateral clerical mistake, it would be relieved of its obligation to forfeit the bid bond under the principle of "equitable rescission." DOT filed this appeal, challenging the propriety of equitable relief in this case.

1. The Code requires that, in order for a bid on a DOT construction project to be considered, it must be accompanied by a proposal guaranty, or bid bond.[2] The bid bond requirement is intended to ensure that a successful bidder will execute a contract on which it

---

[1] OCGA § 32-2-1 et seq.

[2] The Code's bid provision guaranty statute states that:

No bid will be considered by [DOT] unless it is accompanied by a proposal guaranty in the form of a certified check or other acceptable security payable to the treasurer of [DOT] for an amount deemed by [DOT] to be in the public interest and necessary to ensure that the successful bidder will execute the contract on which [it] bid.

OCGA § 32-2-68 (a).

bid.[3] The Code also states that a bid bond will be returned to a bidder, so long as DOT receives the bidder's written withdrawal of the bid before bids are opened.[4] Once bids are submitted, DOT is required to award the contract being bid upon to the lowest reliable bidder, provided that DOT also is authorized to reject all bids submitted.[5] If the lowest reliable bidder refuses to accept or execute a contract it has been awarded, its bid bond becomes the property of DOT as liquidated damages.[6] In that instance, DOT is authorized to award the contract to the next lowest reliable bidder.[7]

Thus, under the statutory scheme for the submission of bids to construct DOT projects, the common law principle that a bid, as an offer, may unconditionally be withdrawn at any time prior to acceptance[8] is not altogether applicable. The Code permits the withdrawal of bids submitted for DOT projects without penalty only before the official opening of bids. Once bids are opened, if a bidder withdraws its bid, the Code dictates that its bid bond is forfeited, regardless of whether the lowest reliable bid has yet been formally accepted. In this regard, the contracting process dictated by the Transportation Code differs markedly from the common law and Georgia's codification thereof.[9]

It is presumed that when it enacted the proposal guaranty statute in 1973, the General Assembly was aware that in common law, an offer may be withdrawn anytime before actual acceptance, and that the General Assembly intended to change that common law principle within the public bidding context.[10] That being so, we do not believe that the General Assembly intended that a bid bond, once submitted, should be rendered a meaningless gesture in the event the bidder posting the bond declines the offered contract. To the contrary, the bid bond's "purpose is to compel the bidder to enter into a contract if his bid is accepted, or to compensate the public body, at least to some extent, for losses incurred if the bidder defaults."[11]

Accordingly, we find that under the statutory scheme delineated for DOT construction projects, MCC was not authorized to withdraw its bid without penalty once all of the bids submitted were opened.

---

[3] Id.

[4] Id. § 32-2-68 (b).

[5] Id. § 32-2-69 (a).

[6] Id. §§ 32-2-69 (d); 32-2-71.

[7] Id. § 32-2-69 (d).

[8] See OCGA § 13-3-2.

[9] See id.

[10] See *Hadley v. Employee Retirement System*, 171 Ga. App. 614, 617 (320 SE2d 620) (1984) (all statutes are presumed to be enacted with knowledge of the existing state of the law and with reference thereto).

[11] *Board of Ed. v. Sever-Williams Co.*, 258 NE2d 605, 610 (Ohio 1970) (construing Ohio's analogous bid guaranty statute).

Nor could MCC refuse to execute a contract awarded to it after its bid was determined to be the lowest reliable one, without being assessed a penalty. Because MCC first attempted to withdraw its bid, and then declined to execute the contract awarded to it, the Code dictates that its bid bond be forfeited.

2. Notwithstanding the prohibition against the withdrawal of bids after they are opened, the Code appears to authorize DOT to relieve a lowest reliable bidder of its duty to perform a contract awarded to it, due to "an obvious error" contained in a bid.[12] In this case, the contractor, MCC, mistakenly calculated its bid by using the incorrect quantities of concrete required for the construction project, resulting in an omission of approximately $299,000 from its bid price. MCC claims that because the correct specifications for concrete were provided to all bidders by DOT, MCC's clerical error in calculating its bid was "obvious," entitling it to be relieved of its duty to perform. However, even if the bid contains an "obvious error," the statute does not appear to require DOT to relieve a bidding contractor of its contractual duties. Rather, the statute simply states that, "if" DOT releases a bidding contractor due to an obvious error contained in a bid, the contract shall be awarded to the next lowest bidder. Accordingly, pretermitting whether MCC's unilateral clerical mistake concerning the quantities of concrete was, in fact, "obvious," we conclude that in this case, DOT was not obligated to release MCC from its contractual obligations.[13]

3. We also find that under the clear terms of MCC's bid, it had no authority to withdraw it within the 50 days following the bids' opening. MCC's bid stated that:

> It is understood and agreed that . . . in consideration of the sum of One Dollar cash in hand paid, receipt whereof is hereby acknowledged, [MCC] agrees that this proposal shall be an option, which is hereby given to [DOT] to accept or reject this proposal at any time within fifty (50) days from the date on which [it] is opened and read . . . it is expressly covenanted and agreed that this proposal is not subject to withdrawal by the bidder during the term of said option.

From this language, it is clear that MCC's bid was made in the form of an option contract supported by adequate consideration, and MCC

---

[12] Id. § 32-2-69 (d) ("If the lowest reliable bidder is released by [DOT] because of an obvious error . . . DOT may award the contract to the next lowest reliable bidder").

[13] In this division, we expressly do not consider circumstances which might include evidence or allegations of an entity such as DOT having actual knowledge of a material miscalculation or error in a bid, and attempting to take advantage of the situation to the detriment of a bidder.

could not withdraw DOT's right to either accept or reject the bid during the 50-day option period.[14] Accordingly, the trial court erred in its written order by finding that there was no evidence in the record that MCC's bid was an option contract, and that it therefore could withdraw its bid before acceptance.

4. Finally, we find that equitable relief is unavailable in this case, and that the trial court erred by allowing equity to contravene a statute. In its order, the trial court found that MCC was entitled to withdraw its bid due to its unintentional unilateral mistake, without forfeiting its bid bond, based upon the principle of "equitable rescission." As set forth by the Court of Appeals in *First Baptist Church v. Barber Contracting Co.*, the principle of "equitable rescission" permits a bidder to rescind a bid based upon an unintentional unilateral miscalculation without forfeiting a bid bond, where rescission is made before acceptance of the bid, and (1) enforcement of the mistake would be unconscionable; (2) the mistake relates to the substance of the consideration; (3) the mistake occurred regardless of the exercise of ordinary care; and (4) the other party has not been prejudiced.[15] The bidder also must give prompt notification of the mistake and the intention to withdraw.[16]

However, what distinguishes this matter from the *First Baptist* case is that the latter involved bids taken for a private contract, whereas this matter concerns bids that were submitted for a public contract, pursuant to strict statutory regulation. It is a basic maxim that "[e]quity is ancillary, not antagonistic, to the law."[17] Equitable relief is not available when the grant thereof would violate the express provision of a statute.[18] In this case, the grant of equitable relief contravenes the Code's requirements that a bid bond must be submitted with a bid to construct a DOT project, and will be forfeited if the bid is withdrawn after bids are opened, or a successful bidder refuses to execute a contract awarded to it. In fact, the grant of equitable relief in this case would render those statutory provisions meaningless. Accordingly, the trial court erred by ruling that equitable rescission was available in this case.[19]

---

[14] *Prior v. Hilton & Dodge Lumber Co.*, 141 Ga. 117, 118 (80 SE 559) (1913); *Amwest Surety Ins. Co. v. Ra-Lin & Assoc.*, 216 Ga. App. 526, 530 (455 SE2d 106) (1995). See also *Hickok v. Starka Indus.*, 154 Ga. App. 589, 590 (269 SE2d 84) (1980) (consideration of one dollar, even if not immediately paid, is sufficient).

[15] *First Baptist Church v. Barber Contracting Co.*, 189 Ga. App. 804, 807-808 (377 SE2d 717) (1989).

[16] Id.

[17] OCGA § 23-1-6.

[18] *H.C.S. v. Grebel*, 253 Ga. 404, 406, n. 1 (321 SE2d 321) (1984).

[19] While we agree with the trial court that MCC's mistake in calculating its bid was, in all likelihood, an unintentional error, we conclude that the trial court erred by finding that enforcement of that mistake would be unconscionable. Given that MCC was engaged in the

It may seem an undue hardship to hold a negligent bidder liable on his contract when it made an unintentional mistake in the preparation of its bid. Nonetheless, as has been noted by other states' courts that have considered this issue, if the provisions of the Transportation Code are to have any legitimate effect, that must be the result in this case. When a proposal is submitted pursuant to the Code, the bidder undertakes all of the Code's terms and obligations.[20] In enacting the statutory scheme for bidding on DOT construction projects, the General Assembly did not provide for an exception in these circumstances, and any such exception must originate with the legislative, not the judicial, branch. Obviously, by requiring bid bonds, the General Assembly intended to provide for open and honest competition in public bidding, and to guard against any potential for fraud or collusion between contractors, or between contractors and DOT administrators.[21] There would be little, if any, use or purpose to requiring a bond to protect the public's interest if, after all bids are opened, bidders are permitted to withdraw their bid by claiming a clerical mistake, when in fact they simply may be having second thoughts that their particular bid is too low. While we see no evidence of any such deception in this case, if the public is to be guarded against similar dishonest tactics, bidders must be consistently held to their statutory and contractual obligations. Accordingly, by refusing to execute the contract that had been awarded to it, the successful bidder in this case, MCC, forfeited its bid bond pursuant to the Transportation Code.

*Judgment reversed. All the Justices concur, except Benham, C. J., who dissents.*

BENHAM, Chief Justice, dissenting.

Because I believe the majority opinion in this case misinterprets the applicable statute and is incorrect in holding that principles of equitable rescission have no place in public sector contract law, I must dissent. The essence of the majority opinion is that because this case involves a public rather than private contract, and because application of the principles of equitable rescission here would con-

---

business of bidding for and performing construction contracts, and that MCC included plain language in its bid that made it an option contract, we find that the contract was not procedurally unconscionable. See *N.E.C. Technologies v. Nelson*, 267 Ga. 390, 392 (478 SE2d 769) (1996). Nor do we find any indication of substantive unconscionability in the contract itself, as the terms at issue are mandated by statute. See id. See also Corbin on Contracts, § 4.28 (1982) (principles of unconscionability not limited to commercial settings).

[20] See *Sever-Williams Co.*, supra. But see generally 2 ALR 4th, § 3.

[21] Id. See *A. J. Colella v. County of Allegheny*, 137 A2d 265, 267-268 (Pa. 1958). See also *City of Columbus v. Independent Towel Supply Co.*, 367 NE2d 915 (Ohio App. 1977); *City of Newport News v. Doyle & Russell, Inc.*, 179 SE2d 493 (Va. 1971).

flict with the statutory process for contracts with the Department of Transportation, the trial court erred in relieving MCC from its contract. The two fatal flaws in that reasoning are that there is no valid distinction to be drawn between public and private contracting with regard to this issue, and the equitable relief granted by the trial court did not conflict with the statutes that control the contracting process.

Insofar as the majority opinion's conclusion in the first division that "MCC was not authorized to withdraw its bid without penalty once all of the bids submitted were opened," can be read to mean MCC was not authorized *unilaterally* to withdraw, I must agree. However, that does not alone lead to the further conclusion that "the Code dictates that [MCC's] bid bond be forfeited." The majority opinion, in its next sentence, recognizes that DOT had the authority under the circumstances here to relieve MCC of its duty to perform.

The most serious flaw in the majority opinion is the attempt to distinguish *First Baptist Church v. Barber Contracting Co.*, 189 Ga. App. 804 (377 SE2d 717) (1989), on the ground that there is some difference between public contracts and private contracts with regard to the issue here. The majority opinion cites no authority for that sweeping distinction, but asserts that equity cannot violate the express provision of a statute. Accepting that premise, that circumstance does not exist in this case. As the majority opinion recognized earlier, DOT had at least two opportunities to relieve MCC of its bid. Thus, the majority opinion's statement that the Code *requires* that the bid bond be forfeited if the bid is withdrawn is not accurate: the Code *permits* the bond to be forfeited.

The majority is correct that it seems an undue hardship to hold a bidder liable when there has been an unintentional mistake in preparation of the bid. I do not agree, however, that such a harsh result is required in order to give legitimate effect to the Transportation Code. In its hyperbole on the subject, the majority opinion sets up the strawman of fraud, then proceeds to knock it down with the rigid application of the statute even though conceding there is no evidence of fraud in this case.

Under the precedent of *First Baptist Church*, supra, the trial court was correct in applying the principles of equitable rescission. Contrary to the majority opinion's analysis, there is support for the conclusion that enforcement of the mistake would be unconscionable. The cases cited in the majority opinion deal with the unconscionability of the contract itself, and there is no issue of that in this case. What would be unconscionable, as the trial court correctly found, would be the enforcement of a contract founded on a material mistake. Although the majority opinion specifically does not deal with a situation where DOT had actual knowledge of a material miscalcula-

tion in the bid, that is what the record shows in this case: prior to selection of the lowest reliable bidder, when it had no obligation to choose MCC, DOT did so, and even after that, when DOT had the authority to relieve MCC of the contract under OCGA § 32-2-69 (d) and had knowledge of the mistake, it chose not to exercise its authority to relieve MCC. Those are just the circumstances when equity is needed to relieve one who innocently makes a mistake.

To apply the rigid approach fostered by the majority opinion would have a negative effect on government contracting. Bidders who are trapped in a bid that is too low because of a mistake will know they cannot escape, so they will be inclined to execute the contract and to cut their losses by cutting whatever corners they can. The impact on the public could be devastating. There is no good reason that equity cannot intervene, when as here there is no statutory impediment, to give relief to one whose mistake is being taken unfair advantage of by the other party to a contract, even when that other party is a government entity. I would affirm the trial court's judgment and must, therefore, dissent.

DECIDED SEPTEMBER 22, 1997 —
RECONSIDERATION DENIED OCTOBER 31, 1997.

*Thurbert E. Baker, Attorney General, Ray O. Lerer, Senior Assistant Attorney General, Cathy A. Cox-Brakefield, Assistant Attorney General,* for appellant.

*Porter & Barrett, Brenda K. Orrison, Smith & Fleming, Robert O. Fleming, Jr.,* for appellees.

*Smith, Currie & Hancock, Robert B. Ansley, Jr., Robert C. Chambers, Philip E. Beck, James F. Grubiak, Oliver Hunter,* amici curiae.