**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 17, 2023**

# In the Court of Appeals of Georgia

A22A1490. MILLER v. EVANS.

MILLER, Presiding Judge.

Jan Miller, plaintiff in the civil action below, appeals from the trial court's order denying her motion to withdraw her offer of settlement, enforcing the settlement agreement, and dismissing the case. Miller argues that she should have been permitted to withdraw her offer of settlement because the settlement amount referenced in that document was a clear and obvious error. Because the record reveals that the trial court failed to consider all of the relevant factors when denying Miller's request for equitable relief, we vacate the court's decision and remand the case for further proceedings.

When a motion to enforce a settlement agreement is decided without an evidentiary hearing, as in this case, the issues raised are procedurally analogous to those in a motion for summary judgment. Accordingly, the

court must view the evidence in the light most favorable to the nonmoving party[.] … On appeal, we apply a de novo standard of review to the trial court's determination to enforce the settlement agreement. Generally, statutory interpretation is a question of law, which we review de novo. But, where it is apparent that a trial court's judgment rests on an erroneous legal theory, an appellate court cannot affirm.

(Citations and punctuation omitted.) *Anderson v. Jones*, 365 Ga. App. 493, 493-94 (879 SE2d 119) (2022).

So viewed, the record shows that, after a car accident, Miller filed a negligence action against the driver of the other car, John H. Evans. On May 6, 2021, Miller's attorney sent to Evans' attorney an offer of settlement for $12,000. Due to delays in the mail, Evans' attorney did not receive the offer until June 16. She emailed Miller's attorney requesting that the offer remain open for 30 days from her receipt of the offer, or until July 15. Miller's attorney responded, "Yes of course." Then, on June 28, Miller's attorney accepted the offer.

On September 14, 2021, Miller filed a motion to withdraw the offer of settlement, asserting that the offer was intended to state a sum of $125,000 and that the reference to $12,000 was a scrivener's error. Miller explained that her attorney instructed his paralegal to prepare an offer of settlement for $125,000, and that the

2

paralegal prepared an offer – mistakenly demanding $12,000 – and placed it in the mail without first having it reviewed by counsel. She noted that during discovery she had itemized $43,372.62 in medical expenses and contended that in light of those expenses, the offer of settlement for $12,000 was clearly a mistake. The trial court concluded that the situation was the result of negligence on the part of Miller's counsel and that rescission of the offer would prejudice Evans because he would be forced to risk a judgment in an amount far greater than $12,000. Thus, the trial court denied the motion, enforced the settlement, and dismissed the action with prejudice. Miller then filed this appeal.

On appeal, Miller contends that the offer's reference to $12,000 was a mistake of fact and that pursuant to OCGA § 23-2-21, she should be permitted to withdraw her offer. Miller further contends that Evans will not be prejudiced by allowing her to withdraw her offer except to the extent that he will not be able to take advantage of her mistake. After reviewing the record, we conclude that the trial court failed to consider all of the relevant factors before denying Miller's request for equitable relief.

OCGA § 23-2-21 identifies mistakes that are relievable in equity, providing:

(a) A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence.

(b) Mistakes may be either of law or of fact.

(c) The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake.

Georgia law "provides for rescission and cancellation 'upon the ground of mistake of fact material to the contract of one party only.'" *First Baptist Church of Moultrie v. Barber Contractor Co.*, 189 Ga. App. 804, 807 (377 SE2d 717) (1989) (quoting OCGA § 23-2-31). Further, pursuant to OCGA § 23-2-32 (b), "[r]elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." In the context of a claim for money had and received, the Supreme Court of Georgia has advised that this statute "may be stated generally to be whether the circumstances have so changed that it would be inequitable to require full restitution." (Citation and punctuation omitted.) *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 405 (349 SE2d 368) (1986). In cases applying this principle, we have identified four key factors: "(1) [whether] enforcement of the

4

mistake would have been unconscionable; (2) [whether] the mistake related to the substance of the consideration; (3) [whether] the mistake occurred regardless of the exercise of ordinary care; and (4) [whether] the other party had not been prejudiced." (Footnotes omitted.) *Decision One Mortg. Co., LLC v. Victor Warren Properties, Inc.*, 304 Ga. App. 423, 427 (696 SE2d 145) (2010) (discussing *First Baptist Church*, supra, 189 Ga. App. at 809). See also *LPS Constr. Co., Inc. v. Ga. Dept. of Defense et al.*, 228 Ga. App. 486, 488-489 (1) (491 SE2d 920) (1997) (same). Additionally, the complainant is usually required to give the other party prompt notification of his mistake and of his intent to withdraw. See *LPS Constr.*, supra, 228 Ga. App. at 489 (1).

Here, the trial court concluded that the offer's reference to $12,000 was a unilateral mistake resulting from negligence by Miller's attorney, and there is ample record evidence to support that conclusion. Nonetheless, as recounted above, our law is clear that even where a unilateral mistake was caused by the complaining party's negligence, relief may be granted in equity "if it appears that the other party has not been prejudiced thereby." OCGA § 23-2-32 (b). On the issue of prejudice, the trial court found "that rescission of Plaintiff's settlement offer would prejudice Defendant in that he would need to continue litigating this case and be forced to risk a judgment

5

or settlement in an amount far greater than $12,000.00." But the inability to hold one's adversary to his unilateral mistake, standing alone, is not typically the type of prejudice that will prevent a party from obtaining relief from a unilateral mistake. This is particularly true where the record establishes that the mistake was "obvious" to the opposing party. See, e.g., *Patterson v. CitiMortgage, Inc.*, 820 F.3d 1273, 1276-1277 (II) (11th Cir. 2016) (applying Georgia law and granting the seller of real property relief from a unilateral mistake in its counteroffer because, considering the parties' negotiations – including the buyers' most recent and still outstanding offer of $444,000 – seller's counteroffer of $113,968.45 was an obvious mistake and granting the seller relief from that mistake would not cause the buyer any injustice).

In some cases, it is clear that granting the complaining party relief from its unilateral mistake would cause the opposing party to experience a detriment. For example, in *Frazier Assoc. Manufacturers Representatives Inc. v. Dabbs & Stewart*, 173 Ga. App. 304 (325 SE2d 914) (1985), a vendor made an offer to sell a general contractor eleven boards for $1,160. The general contractor accepted the offer and incorporated that cost into its bid for construction of a school. Id. After the general contractor won the bid to build the school, the vendor realized it had made a mistake in its offer and insisted that the contractor pay $6,590 instead of $1,160. Id. at 305.

6

The general contractor bought the boards from a different source for $6,780 and then sought to recover the difference – $5,620 – from the original vendor. We concluded that the general contractor was entitled to summary judgment, emphasizing that nothing on the face of the vendor's document established that the quote of $1,160 was an obvious mistake (including no apparent relationship between the mistaken amount of $1,160 and the correct amount of $6,590), the general contractor denied knowing that the offer of $1,160 was a mistake, and the general contractor acted on the offer to its detriment when it incorporated the offer into its bid to construct the school. Id.

In other cases, it is clear that granting the complaining party relief from its unilateral mistake will not cause prejudice to the opposing party except that the opposing party will not benefit from a windfall. For example, in *First Baptist Church*, supra, 189 Ga. App. 804, a church requested bids for the construction of a new building. A contractor submitted a bid for $1.86 million, which the church accepted. Pursuant to the terms of the church's request for bids, after that contractor's bid was accepted by the church, the contractor was required to post a bid bond of $93,000. Id. The contractor subsequently realized it had made an error in calculating its costs; its bid should have been $143,120 higher. Id. at 805. The contractor notified the church of its mistake and requested that it be permitted to withdraw its bid. The church,

7

nevertheless, prepared a contract based on the bid, which the contractor refused to sign. The church proceeded with the project with the second-lowest bidder, paying approximately $1.9 million. Id. But the church also insisted that the first contractor pay the $93,000 bid bond that became due when the church accepted its miscalculated bid. Id. at 805-806. When the contractor refused, the church filed suit to recover the amount of the bid bond. Id. at 806. We concluded that the contractor was entitled to summary judgment because, even if the miscalculation constituted negligence, the church was not prejudiced by the contractor's rescission of its bid. Id. at 806-809. As we explained, by denying the church the ability to collect the bid bond that became due when the vendor submitted its later-rescinded bid, the church "lost only what it sought to gain by taking advantage of the contractor's mistake." Id. at 808. See also *Wyatt v. Hertz Claim Mgmt. Corp.*, 236 Ga. App. 292 (511 SE2d 630) (1999) (where a car accident case settled for $1,500 but the payor mistakenly issued a check for $15,000, it was entitled to summary judgment on its claim for money had and received based on a weighing of the equities, including that the only harm the recipient identified is that she would have to pay back money she had already spent).

A more recent case applying these principles is *Decision One Mortg.*, supra, 304 Ga. App. at 423, where a mortgage company's paralegal made a clerical mistake

when calculating the opening bid for a foreclosure sale of real property. As a result, the company set the opening bid for the property at $27,750 rather than $333,000. Id. at 425. The highest bid at the foreclosure sale was for $54,000, and the bidder tendered that amount to the mortgage company. Id. Several weeks later, the mortgage company sent the funds back to the bidder and declared that it had rescinded the foreclosure sale. Id. at 424. The bidder then filed suit against the mortgage company, seeking damages for breach of contract or an order of specific performance requiring the mortgage company to deliver a deed for the property. Id. The mortgage company cited OCGA § 23-2-32 (b) in support of its request for relief from its mistake, but the trial court granted summary judgment to the bidder, and we affirmed, emphasizing that the mortgage company "made no effort . . . to establish that its mistake occurred despite the exercise of ordinary care" or "to show that [the bidder] would not be prejudiced[]" if the mortgage company was permitted to rescind the sale. Id. at 428.

Turning to the instant case, the trial court does not appear to have conducted a balancing of the equities under the framework set out in *First Baptist Church*. Pertinently, the trial court did not evaluate whether it would be unconscionable to enforce the mistake and whether Miller acted promptly to rescind the offer once she discovered the mistake. Further, the trial court did not evaluate whether the mistake

9

was "obvious" to Evans when he received the offer, particularly in light of Miller's previous discovery response itemizing over $43,000 in medical expenses. Finally, the trial court's conclusion that Evans will be prejudiced by having to litigate, rather than settle, the underlying case is tenuous because the only prejudice the trial court identified is that Evans will lose the ability to "tak[e] advantage of the [law firm]'s mistake." *First Baptist Church*, supra, 189 Ga. App. 808. We are aware that when, as here, a party has requested equitable relief, the issue falls "within the sound discretion of the trial court." (Citation omitted). *Prime Bank v. Galler*, 263 Ga. 286, 288 (4) (430 SE2d 735) (1993). In this case, however, the record reveals that the trial court did not weigh all of the relevant factors before ruling on Miller's motion, so we cannot affirm its decision. See *Graham v. Hogan*, 185 Ga. App. 842, 844 (1) (366 SE2d 219) (1988) (vacating grant of summary judgment in light of factual issues and undetermined equities relevant to OCGA § 23-2-32 (b)). Instead, we must remand the case so the trial court can consider Miller's request for relief under the proper standard.[1]

*Judgment vacated and case remanded. Rickman, C. J., and Pipkin, J., concur.*

---

[1] This opinion should not be read to express any view on the ultimate outcome of this issue.